HOLMES *against* The Lessee of HOLMES and others.

IN ERROR.

*Chambersburg,*
*Monday,*
*Oct. 5.*

The testatrix gave to her grandson *H* her " plantation, " with the appurtenances, " to hold to his " heirs and assigns forever, " to be entered " upon and taken possession " of by him as " soon as he arrives at the " age of twenty-one years, or " the day of his " marriage, " which shall " first happen;" directing that " if he shall die " under age, or " without issue, " his estate " shall descend " to his next " brother and " his heirs; but " if he leaves no " brother, then " to his sisters " and their " heirs, share " and share " alike." *H* entered into possession and died

THIS was a writ of error to the Common Pleas of *Cumberland* county, to bring up the record and proceedings in an action of ejectment. By a special verdict, under which the case was decided below, the jury found—

That *Agnes Graham*, on the 4th of *January* 1768, was seised in her demesne as of fee of the premises in the declaration mentioned; and being so thereof seised, on the same day made her last will and testament in writing, in which, after ordering her debts and funeral expenses to be paid, she devised as follows: " I give devise and bequeath " unto my grandson *William Graham Holmes, my plantation* " *and tract of land situate on Letart Spring above Carlisle,* " *with the appurtenances, to hold to his heirs and assigns* " *forever, to be entered upon and taken possession of by him,* " *as soon as he arrives at the age of twenty-one years or the* " *day of his marriage, which shall first happen.*" " I do will " order and direct, that if my grandson *William Graham* " *Holmes* shall *die under age* OR *without issue,* that his es- " tate shall descend to his *next brother and his heirs;* but if " he leave no brother, then to his sisters and their heirs " share and share alike." That the testatrix gave small legacies to several persons, and the residue to her said grandson, ordering " that the herein before mentioned legacies be " paid out of the rents and profits of my plantation, arising " before my said grandson arrives at the age of twenty-one

seised, *of full age,* but unmarried, and *without issue. Held* that *H* took an estate in fee simple, with a good executory devise over, in case of his death under age *and* without issue; and that on his attaining the age of twenty-one, his estate became indefeasible, and on his death descended according to law.

"years or marriage." That *William G. Holmes* the devisee entered and took possession, and died seised thereof on the 30th of *July* 1804 intestate, *of full age*, unmarried and *without issue*, leaving a father, *Andrew*, and a mother, both in full life. That the said *Andrew*, on the 12th of *February* 1805, conveyed the same to the lessors of the plaintiff, and the defendant, as tenants in common. That *W. G. H.* had a brother *John* of the whole blood, who was born on the 27th of *March* 1768, and died the 26th of *December* 1801, of full age, unmarried and without issue. That the lessors of the plaintiff are the sisters, younger brothers &c. of the sai *W. G. H.*, and the defendant is and was the oldest surviving brother of the said *W. G. H.* at the time of his death. The jury found also the lease entry and ouster, and that the defendant was in possession.

Upon this verdict, the Court below rendered judgment for the plaintiff, and the defendant took a writ of error.

The points here made for the plaintiff in error, were 1. That *William Graham Holmes* took an estate tail, with a contingent remainder in fee to his next surviving brother that should be alive at the time of his death without issue; viz. the defendant below. 2. That if he took a fee, there was an executory devise over to the next surviving brother, in the event of his dying *without issue living at the time of his death.*

For the defendants in error it was argued, 1. That *William Graham Holmes* did not take an estate tail, but a fee simple, with an executory devise over, on the event of his dying under age *and* without issue, which had not happened; and that the fee became indefeasible at twenty-one. 2. But if the event had happened, on which the executory devise was to take place, the estate went to the heirs of *John*, the oldest brother of *W. G. Holmes*, who died in the life time of the latter; and the lessors of the plaintiff were his heirs, in part.

The case was elaborately argued by *Watts* for the plaintiff in error, and *Duncan* contra; but as the whole ground is gone over by the Judges in their opinions, it is unnecessary to give a note of the argument.

TILGHMAN C. J. The question in this case arises on the will of *Agnes Graham*. The point to be decided is, whether the devise of a tract of land to *William Graham Holmes*, grandson of the testator, carries an estate in fee simple, indefeasible on his attaining the age of twenty-one years.

To ascertain the intention of the testator, is the great point in the construction of wills. The intention being ascertained, is to be carried into effect, unless forbidden by law. In order to discover the testator's meaning, we must place ourselves in the situation in which he was at the time the will was made. Subsequent events being unknown, could not have entered into his mind, nor influenced his will. In considering the will now before us, there are several things which the testatrix appears clearly to have intended. 1st. That her grandson should take a fee simple. 2d. That he should enter into possession at the age of twenty-one, or marriage, whichever should first happen. 3d. That upon certain events, the estate in fee simple was to pass to another person. But upon what events? Upon the devisee's dying *under* age, or *without issue*. In strict construction then, the estate would go over, if the grandson died before twenty-one, or if he died without issue. Suppose he was to die before twenty-one, *leaving issue?* Was it the intent that in such case the issue should be disinherited? Certainly not. How then is the intent to be effected? The most rational way of construing such a devise, that which upon the whole will best accords with the testator's intention, is, to reject the particle *or*, or to give it a copulative meaning, and then the estate of the devisee becomes indefeasible, unless *both* the contingencies happen, that is to say, unless the devisee dies without issue, and also before twenty-one. This would appear to me the best construction, if it were a new case. But it is not. On the contrary, devises so like the one before us as not to be distinguished from it, have received the construction which I have mentioned, at various times and by various judges, for the last two hundred years. In *Soulle* v. *Gerrard*, 38 and 39 *Eliz. A. D.* 1596, *Cro. El.* 525., *Moore* 422., *A* having issue four sons, devised land " to *B* (one of " them) and his heirs forever, and if *B* died within the age " of twenty-one years, *or* without issue, then the land to be " equally divided among his three other sons." *B* had issue,

and died *within the age of twenty-one.* Held that the issue
should take. The word *or* was construed *and.* In *Price* v.
*Hunt,* 36 *Car.* 2. *A. D.* 1684, (*Pollex.* 645) one devised
land " to his son and his heirs, and in case his son die before
" he attain to twenty-one, *or* have issue of his body living,
then to another person." The son lived to twenty-eight
years of age, and then died without issue. Held that the
land went to the heir of the son. In *Barker* v. *Suretees,* 15
*Geo.* 2. *A. D.* 1743, 2 *Str.* 1175, *A* devised " to his grand-
" son, his heirs and assigns, but in case he dies before he
" attains the age of twenty-one years, *or* marriage, *and* with-
" out issue, then and in such case to another person." The
grandson attained twenty-one and died, having never been
married. Held that on attaining twenty-one, the estate of the
grandson became absolute. In *Walsh* v. *Peterson, A. D.* 1744,
3 *Atk.* 193, *A* devised " to his son and his heirs, but in case
" his son should happen to die before he attained the age of
" twenty-one years, or without issue," then to the testator's
wife. The son died after the age of twenty-one, but without
issue. Held by Lord *Hardwicke* that the estate in fee be-
came absolute in the son, as soon as he arrived at the age of
twenty-one. In *Framingham* v. *Brand, A. D.* 1746, 1 *Wils.*
140, the devise was " to *R. F.* my son, and his heirs and as-
" signs for ever, and in case the said *R. F.* my son happen
" to die in his minority, or unmarried, or without issue,
" then I give the inheritance in fee to *H. B.*" The son at-
tained the age of twenty-one, but died unmarried and with-
out issue. Held by Lord *Hardwicke,* that both the words *or*
should be taken in a copulative sense. I forbear to trace the
*English* cases lower down, because an act of assembly for-
bids the citing of any cases adjudged since the revolution.
But what will be more satisfactory, I will mention the opi-
nions of courts in various parts of the *United States,* all coin-
ciding with the *English* decisions. In *Ray* v. *Enslin, A. D.*
1799, 2 *Mass. Rep.* 554, the devise was " to my daughter
" and her heirs for ever, but in case my daughter should
" happen to die before she comes to age, *or* have lawful heir
" of her body begotten, then over." The daughter attained
the age of twenty-one and had issue; held by the Supreme
Court of *Massachusetts* unanimously, that the daughter took
an estate in fee simple, defeasible upon a contingency deter-

1812.

HOLMES
*v.*
Lessee of
HOLMES.

1812.

Holmes
*v.*
Lessee of
Holmes.

minable in a reasonable time. The question in this case was between the issue, and the alienee of the daughter. The issue claimed under the idea of their mother having taken an estate tail, and I mention the case, because in the argument before us, it was also contended that the devisee took an estate tail. In *Jackson* v. *Blansham*, A. D. 1810, in the Supreme Court of *New York*, 6 *Johns. Rep.* 54, *A* devised the residue of his estate " to his six children, and their " heirs, to be divided between them share and share alike; " but if any one or more of them should die, before they " arrive to full age, or without lawful issue, the part of the " one so dying, to be divided among the rest of the surviv- " ing children, and to their heirs and assigns for ever." One of the children, after attaining the age of twenty-one years, died without issue, having mortgaged his share of the estate. The Court were of opinion, that on attaining the age of twenty-one, the estate in fee became absolute. This case carries very great weight, because the Court, on a former occasion, had expressed a contrary opinion when the same point was brought before them in a collateral way, and not fully argued or considered. But whoever reads Chief Justice *Kent's* opinion, delivered after mature reflection, will be satisfied, that his ultimate judgment was not formed without a thorough investigation of the subject. The last case which I shall mention, is that of *Hauer's Lessee* v. *Sheetz*, 2 *Binn.* 532, decided in the High Court of Errors and Appeals in this state. There the testator devised, " to " his son *Francis*, his heirs and assigns for ever, but in case " he should die under the lawful age of twenty-one years, " or without lawful issue, then to his son *Peter*." It was held that *Francis* took an estate in fee, which became indefeasible on his attaining the age of twenty-one. I know very well that there were other parts of the will, which afforded ground for powerful arguments; but the consideration of the clause which I have cited was brought home to the Court, and I am well satisfied that they all adopted the construction which prevailed in the cases which I have mentioned. It has been said that it is in vain to cite cases on wills, because they are of no authority, unless exactly similar to the one under consideration. But this principle, though true to a reasonable extent, may be carried *too far*.

If two cases are substantially the same, it is sufficient. Repeated decisions on the effect of certain words, ought to establish a rule of property, unless, (which no wise man would wish) we mean to set every thing afloat, which depends on last wills and testaments. It is very rarely that we see such coincidence of opinion as is found on the cases which have been mentioned, and I confess I am not able to distinguish them from that which we are to decide. I am satisfied therefore that *William G. Holmes* took an estate in fee simple, subject to an executory devise over to his next brother, in case he died under the age of twenty-one, and without issue. Having attained the age of twenty-one, his estate became indefeasible, and on his death descended to his heirs, so that the plaintiff in error has no title. This was the opinion of the Court of Common Pleas of *Cumberland* county, and I am for affirming their judgment.

YEATES J. The questions in this case arise on the will of *Agnes Graham*, which has been stated. The counsel for the plaintiff in error have attempted to maintain two propositions. 1. That *William Graham Holmes* took an estate tail in the lands in question; and that the word *or* in that clause of the will, which directs, that if the testatrix's grandson *W. G. H.* should die under age *or* without issue, that his estate should descend to his *next* brother and his heirs, shall be taken as it stands in the will in the disjunctive, and not in the conjunctive; and consequently that on either contingency of the death of the first under age, *or* of his dying without issue, the estate must go over to him as remainder man according to the limitation: and 2dly, If *W. G. H.* did not take an estate tail, that a good remainder is limited over to *Andrew Holmes*, as his next surviving brother, by way of executory devise.

It would be idle affectation to cite authorities to shew that no rule of law is better settled, than that the intention of a testator expressed in his will shall govern its construction, if the nature of the estates thereby devised be not incompatible with the policy of the law; and that this intention must be collected from the words of the will taken altogether. We must first search for the *general* intent, and give effect thereto. If there be a *secondary* intent, which

*1812.*

HOLMES
*v.*
Lessee of
HOLMES.

1812.

HOLMES
v.
Lessee of
HOLMES.

interferes with *that*, we are bound to reconcile the whole will as far as we are able, but at all events we are to give effect to the primary and general intent. We are authorised to construe a disjunctive word into a conjunctive, and *vice versa*, where it is necessary to give effect to the true meaning of a testator; but unless there be something in the will or the subject from which it may be fairly collected, that the testator did not use such words in their grammatical sense, the grammatical sense must prevail. We cannot from arbitrary conjecture, though founded on the highest degree of probability, add to a will or supply the omissions. 3 *Burr.* 1634. We cannot make wills and insert words arbitrarily or by conjecture. *Ib.* 1635.

The strong argument urged by the counsel of the defendants in error, against the construction set up by the adverse party in the case before us, is, that the specific words made use of by the testatrix have gained a fixed legal import; and that a variety of decisions have established, that where an estate is given to a man and his heirs, and in case he die before twenty-one, or without issue, then over, unless there are plain words in other parts of the will shewing a different intention, it forms but one contingency; and that the will here must be read as if the testatrix had said, if my grandson *W. G. H.* shall die before he attains his full age, *and* without issue, conjunctively, and not disjunctively; for this obvious reason, that if the first taker should die under age, leaving children, the testatrix could never have meant, that those children should be stripped of the property devised to their father. It is not asserted that adjudged cases upon wills have the same binding force on the Court as other precedents, devises being so infinitely diversified; but it has been insisted with great strength of reasoning, that where certain expressions in a will, have received on full consideration a decided settled meaning as to the nature of the estate created thereby, such meaning ought not to be departed from in other instances, unless the testators have clearly manifested an intention to the contrary. Much reliance has been placed on *Hauer's Lessee* v. *Sheetz*, determined in the High Court of Errors and Appeals in *July* 1807, reversing the unanimous decision of the members of this Court in *September* Term 1801, 2 *Binn.* 532. The

cases of *Chew's Lessee* v. *Weems et al.* determined in the
Provincial Court of *Maryland* in 1772, and the judgment
reversed in the Court of Errors in 1775, 1 *Har. & M'Hen.*
463.; of *Brewer et uxor* v. *Opie*, determined in *Virginia* in
1798, 1 *Call.* 212., and of *Ray* v. *Enslin and Ray*, deter-
mined in *Massachusett's Bay* in 1799, 2 *Mass. T. R.* 554.,
were not then published. That of *Fairfield Lessee of Hawkes-
worth et uxor et al.* v. *Morgan*, 5 *Bos. & Pul.* 38, was de-
termined in the House of Lords in 1805; and of *Jackson
Lessee of Burhans et uxor* v. *Blanshan*, in *New York* in 1810.
6 *Johns.* 54. I have examined these different authorities
with all the attention in my power, and think none of them
come up to the case of *Hauer's Lessee* v. *Sheetz.* I may be
permitted to say with all due deference to a Court of Error,
that though our decision has been reversed, my judgment
remains unconvinced. I view the will and codicil of *Peter
Sheetz* the father, as affording, on a minute examination of
all the clauses therein, strong internal evidence, that he did
not intend his son *Francis* should take a fee simple in
the lands on his barely coming of age. Even admitting that
the testator in that case contemplated the improbable events
that within less than twelve months he should die, and that
his son *Francis* should marry and have a child within that
period, the fixing the payment of the 500*l.* to his daughter
*Elizabeth* by his surviving son, as a cotemporary act with
his taking the land, manifests his intention to exclude the
daughter from taking the land, in case the brother died
without issue. The mutuality of survivorship between the
two sons, on the occurrence of the events pointed out,
strongly marked the mind of the testator. But if *Peter*
should not succeed to *Francis* on his dying without issue,
the 500*l.* could not be raised for the daughter, as the two
estates would continue divided, and her husband surviving
her would have held the lands during his life, notwithstand-
ing the jealousy expressed of him in the will. No part of
the 2300*l.* devised to *Peter*, was payable on *Francis's* com-
ing of age, nor was any part of it paid at the time of his
decease. If *Francis* had died in his minority, leaving issue,
or had paid to *Peter* any part of the money to which the
lands were subjected, I should feel no hesitation in assert-

ing that in either case a fee simple would have vested in him:—But neither of those events had happened. It is generally true, that a devise shall stand as at the time of making the will, and shall not be construed by any after-act, collateral contingency, or subsequent circumstance. But it is equally true, that the rule is not universal, and that we meet with several cases in our books, wherein limitations over have been construed *according to the event*, in order to support the intention of the testator. *Forrest.* 50., 1 *Atk.* 581., 2 *Ves.* 249., 2 *Fearne* 494 to 498. Courts of justice, through the medium of additional words or concomitant circumstances, will be anxious to escape from the trammels of technical reasoning, by the force of fair argument, founded upon specific and obvious differences, in favour of evident intention. 2 *Fearne* 258., *Hob.* 29. Lord C. J. *Wilmot*, has thus expressed himself in *Kerby* v. *Fowler*, (*ib.* 245). " We are bound to an artificial and technical " sense of words, unless there is an *apparent intention* in " the testator of using them in their natural meaning, and " for that purpose, which is in favour of *common sense*, the " *most trifling circumstance* is sufficient." And another chief justice, in a late case on a will wherein a father devised lands to a natural son, and the heirs of his body, and if he died before twenty-one, *and* without issue, then over, puts this striking interrogation:—" Is there not a rule of *common* " *sense* as strong as any rule can be, that words in a will " are to be construed according to their natural sense, unless " some obvious inconvenience or incongruity would result " from so construing them?" And the other members of the court concurred with him.

I have thus given a general outline of the grounds on which my opinion was formed in *Hauer's Lessee* v. *Sheetz;* and I have been more minute therein, from being well informed, that the questions upon that will cannot be again revived.

The present case however has none of these strong predominant features, which influenced my former judgment, or which, in my idea, would form an exception to the general rule of construction. Here *W. G. H.* the first taker, was an infant not three years old, at the time of his grand-mother's making her will, and at her decease. From the usual

perils of childhood, she might reasonably suppose that there was a considerable chance of his not surviving eighteen years. Here was no favourite brother to whom the testatrix anxiously wished to extend her bounty, upon the death of the person, who bore her name, without issue. No mutuality is preserved between the brothers,—nor is any money to be paid by the second taker to either of his brothers or sisters. In short, I see no words or circumstances, which justify me in inferring, that unless both contingencies, the arriving at full age and having issue, should happen, the lands should not absolutely vest, according to any reasonable construction which can be given to the will. No one who reads the will, can deny that *W. G. H.* was the *primary* object of her regard, or that his brothers were the *secondary* objects in preference to the sisters; and yet, under the construction set up by the plaintiff in error, it would necessarily follow, that if all the brothers of the first taker had died in his life time, and had severally left children, those children must have given way to their surviving aunts. This appears to me totally inadmissible, obviously inconvenient, and incongruous with the whole scope of the will. I therefore am led to conclude, that under the true meaning of the will under consideration, *W. G. H.* took an estate in fee simple in the lands devised to him, on his arrival at full age.

But supposing the event not to have happened, which completed the entire interest of the first taker in the lands, I do not see how the plaintiff in error could make out his pretensions to the lands. The limitation over is to the *next* brother and his heirs, the natural meaning of which is *next brother in point of age*, and not the brother surviving *W. G. H.* on his dying without issue. If a contrary doctrine should prevail, and *John,* the next eldest brother, had died leaving children in the life time of *W. G. H.*, such children would lose all claim to the lands, which is also inadmissible.

I am of opinion that the judgment of the Court of Common Pleas should be affirmed.

BRACKENRIDGE J. I take no exception, *in substance*, to construing *or*, *and*, or construing *and*, *or;* but to the appearance of what is *arbitrary*, when the analysis of language would lead to the same result. In common speech, or writ-

ing, every word that is used in the first branch of a sentence, is not usually brought forward, and repeated in the last; but is left out, to be understood and supplied in the mind of the reader or hearer. This omission, or deficiency, is called by the grammarians an elipsis, than which there is not a more common abreviation; and all that is to be done is the filling up, according to what will appear from the whole of the sentence, or from the whole of the speech, or writing, to have been the meaning. Thus in the case before us, " *If he shall die under age or without issue,*" I fill up the elipsis, after the word *or*, by bringing forward such words from the first branch of the sentence, as may seem to have been omitted; and the only question will be, whether I shall bring forward the whole that preceded the word *or*, or but a part. If I bring forward the whole, it will read, " If he shall die under age, or if he shall die *under age* without issue." If I bring forward a part only, it will read, " *If he shall die under age, or if he shall die without issue.*" This last is my filling up, because it is not necessary to supply the whole, in order to reach the case of a dying under age, *leaving issue;* which was the case to be reached, where, on a different construction, such issue would have been left unprovided for; and the filling up in this manner lets in the whole *intention*, which was to give a fee to the devisee, *defeasible on his dying without issue.* How does that appear? From the taking the two clauses of the will together, which respects the devise of the real estate, and considering the import of the terms, " unto my grandson *W. G. Holmes* &c. to hold to his " heirs and assigns forever, to be entered upon and taken " possession of by him as soon as he arrives at the age of " twenty-one years, or the day of his marriage, which shall " first happen." I presume we must supply the words, of *these events;* that is, which of these events shall first happen; for she did not mean to say, that it shall be a condition precedent that he shall marry before he was twenty-one; in other words, that his marrying shall be before he is twenty-one, though this is something like *the technical* manner of construing wills. But the will goes on in a succeeding clause, " If he shall die under age, or without issue, that " his estate shall descend to his *next* brother and his heirs; " *but if he leaves no brother*, then to his sisters and their

"heirs, share and share alike." *Heirs* carries a fee; and the meaning is evident, that the devisee should take a fee simple interest, the possession to vest the day of marriage, or the coming of age. It is not a *fee tail;* for it is not to him and his *issue,* but to him and his heirs, *on his having issue;* on which event the estate became absolute, subject nevertheless to the going over on his dying not leaving lawful issue, and not having disposed of the fee simple. It not being a fee tail, there can be no *remainder,* and the devisee over must take by way of *executory devise.* But the devisee over was the *next brother* and his heirs, which next brother was *John,* who had deceased before the *contingency happened* on which the estate was to go over. But an interest had vested which could go to his heirs. But what shall we do with the words " *if he leave no brother.*" It cannot mean no *next brother John;* for that would be supplying the word *John,* or at least restraining the provision to him only. And what was there in *John,* more than in any other brother but the relation? We have as good a right to supply the word every, and then it will read every *next* brother; and we shall be more justifiable, as it will accord with what follows, " *if he leave no brother.*" I think we are bound to do it; because, otherwise, there can be no meaning in the conditional " *if he leave no brother.*" It would be absurd to say that it means, if he leave no *next brother John.* It is evident that *next* after *next* is intended, and that every brother shall take the place of the preceding as he shall be in succession. I take it then, that though *John* had a vested *interest,* yet it was also defeasible; and, on his dying without issue, might come to the brother next to *him,* who is *Andrew* the defendant. *This by way of executory devise.*

What is in the way of this; the *rule of law, or rule of construction?* No rule of law can be pretended. For there is no fee mounted on a fee. The lives were all in being. No putting the fee in abeyance, &c. *What rule of construction* is there in the way, though it may seem a strange thing to people not scientific, to talk of *understanding by rule.* We know what is meant;—but the question will be, *whether we ought to know it.* We are wrong in understanding what is written, unless the rules of art give us leave. But let the technical

1812.

HOLMES
*v.*
Lessee of
HOLMES.

terms have their appropriate meaning, I can find nothing in them, that forms the least impediment to take the words in their popular acceptation, and construe them as ninety-nine out of a hundred of the bulk of mankind would do. Taking it up then as it will appear to the common sense of the community, I will ask what did the testatrix mean? Was it to give a contingency after the eldest, *William*, to the second (*John Holmes*) only, and to drop the rest? Or was it *to continue the contingency to all the brothers, that she might preserve the estate in the family, and in the name of Holmes?* I think it was.

" If he leave no brother, then to his sisters and their heirs share and share alike." *The devise over to the sisters, shews that she considered herself to have comprehended every brother* under the preceding contingencies; every *next* to take *toties quoties* as the second brother *John* would have done. The words " *leaving no brother*," are with me conclusive, *that while there was a brother left, he had a contingent interest in this estate.*

I have preferred considering the devise in this case as an executory devise, rather than as a contingent remainder; because in that case, I must have construed the estate given in the first instance to be an *estate tail.* It is in this last light that the counsel for the defendant seem to have thought that it ought to be taken. In that light it would equally serve them, for the defendant is the heir in tail, and the estate has not been barred by a *recovery.* But I cannot believe that the testatrix ever thought of entailing. Taking into view her *sex*, her *residence*, the *unlearned language of the will*, I cannot think it likely that she had ever heard of such a species of interest, and which is so little known to this country. But it will be said *that she has entailed without meaning it.* Doubtless the *English* Judges will tell you, that words may be *construed* otherwise than they *mean; that* though you may hear or see without rule, you cannot understand without rule, and you must submit *to the rule of construction*, let you think what you will of a *possible intention.* But this kind of language begins to be scouted in their courts; and it is an expression of Lord *Ellenborough* lately, " is there " not a rule of common sense as strong as any rule, that words " in a will are to be construed according to their natural

"meaning, unless some obvious inconvenience, or incon-
"gruity would result from so construing them?" But take
it that the estate devised is an estate tail, the words heirs
and assigns being so qualified by the dying without issue,
as to constitute an estate tail, it will equally, as has been
argued, serve the defendant. And I might be willing to
take it in that light, as it would not be inconsistent with the
main object of the testatrix, *the continuing the estate in the
name of Holmes;* but I am opposed to the construing an
estate any thing, *vi terminorum,* which I cannot infer from *a
consideration of the whole will* to have been intended.

I believe nothing has been thought to depend in this case
on the construction given to the words on *the dying without
issue,* meaning without issue *at the time of the death.* The
*English* decisions have a quibble in the case of dying with-
out issue, or dying without *leaving* issue, and leaving issue
*behind,* as if any thing could be *left* that was not *behind.*
But this begins to be the subject of ridicule at their own
bar, as in a late argument of counsel may be seen; and I
only notice it as marking the progress of common sense in
the jurisprudence of that country, in which, I presume,
one cannot be said to err, that would be disposed to follow
them; and which, having no prejudice against them, I am
disposed to do in every improvement of the science, over-
whelmed with no veneration for what they themselves must
feel to be the remains of early imperfection in rules laid
down, or in the application of them.

In this case my opinion will be to reverse the judgment.

Judgment affirmed.