By the Court, Beardsley, J.
Medcef Eden senior, in his lifetime, and at his decease, was seised in fee 'simple of the premises in controversy in this suit, as well as other real estate. He died in 1798, having previously made and executed his last ' will and testament so as to pass real estate. By that will he gave, devised and bequeathed to his son Joseph, certain lots of ground in the city of New-York, to hold the same to the sole and only use of the said Joseph, his heirs and assigns forever, in as full, ample and beneficial a manner, to all intents and purposes, as the devisor could if living. There was a similar devise of *602 certain other real estate, including the premises now in suit, to Medcef Eden junior, the other son of the testator.
The will contained this clause: “ It is my will, and I do order and appoint, that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor; and in case of both their deaths without lawful issue, then I give all the property aforesaid to my brother John Eden of Loftus &c., in Yorkshire, and my sister Hannah Johnson of Whitby, in Yorkshire, and their heirs.” The will also contained a general clause devising all the rest, residue and remainder of the estate of the testator, not therein before disposed of, to the said Joseph and Medcef, equally to be divided between them, share and share alike.
This will was in full force when the testator died. His two sons mentioned were his only children and heirs at law; and on his decease they severally entered into possession of the lands respectively devised to them.
In the year 1800, judgments were recovered in the supreme court against the sons, which were duly recorded and docketed, and upon which writs of fieri facias were issued to the sheriff of the city and county of New-York. By virtue of these writs the sheriff levied upon a part of the real estate so devised to .Medcef Eden junior, including the land in question, and, on the twenty-second day of April, 1801, sold the same to Tennis Wortman, who afterwards received the sheriff’s deed. This deed purported to convey all the estate, right, title and interest of Medcef Eden junior in and to the premises described therein; and Wortman took possession under the deed.
In 1802, Joseph Eden and Medcef Eden junior, in order to assure and confirm the title of Wortman to the land so sold and conveyed by the sheriff, united in a deed to him, by which they' declared that they released, conveyed and confirmed said land to said Wortman, his heirs and assigns forever.
Joseph Eden died in 1813, leaving no issue, and without ever having had issue.
In the year 1819, Medcef Eden junior made and executed his last will and testament, by which he devised all his estate *603 in fee, upon certain terms, trusts and contingencies. Shortly after making this will, and in the same year, he died, without ever having had issue.
As to the land in controversy, the plaintiffs are admitted to have all the right and title which Medcef Eden junior had, either when he made his will, or at the time of his decease, and which he could devise. And the defendant has all the right and title which Wortman acquired by the sheriff’s sale and deed, and by the deed from Joseph Eden and Medcef Eden junior. The case, in my estimation, turns exclusively upon the effect and operation of the will of Medcef Eden senior, the question being oné of mere construction. If Medcef Eden junior took an estate in fee under that will, Wortman acquired that estate by the sheriff’s sale, and the defendant, having his title, has a complete defence. But if, on the contrary, Medcef Eden junior took but a life estate until the decease of Joseph, that was all which Wortman acquired; and the defendant, having no greater or other title than Wortman thus took, has at this time none whatever, and the plaintiffs are entitled to judgment.
The will of Medcef Eden senior has on several occasions been before this court and the court of errors, and in most respects its construction must be deemed settled. The result of what has thus far been decided appears to be as follows: 1st. The devise over to the brother and sister of Medcef Eden senior was void. It was limited on too remote a contingency; that is, an indefinite failure of issue on the part of Joseph Eden and Medcef Eden junior. (Wilkes v. Lion, 2 Cowen's Rep. 333; 20 John. Rep. 483, S. C.) 2d. The devise over to the surviving brother was valid as an executory devise. On the decease of Joseph, without issue, the estate created in his favor, whatever may have been its nature, terminated, and the lands primarily devised to him passed under the will to Medcef Eden junior as survivor. (Anderson v. Jackson, 16 Johns. Rep. 382; Wilkes v. Lion, 2 Cowen's Rep. 389, 393, 394, 396, 7: Pelletreau v. Jackson, 11 Wend. 123.) 3d. The estate in the lands devised to Joseph, which on his death passed to Medcef *604 Eden junior as survivor, was a fee. (Wilkes v. Lion, 2 Cowen’s Rep. 333.) 4th. During the life of Joseph, Medcef Eden junior had no present estate, interest or right in the' lands devised to Joseph. He had a mere possibility or expectancy of a future estate, interest or right. (Jackson v. Waldron, 13 Wend. 178; 11 id. 110, S. C.)
It will thus be seen that most of the important and intricate ■questions which could be raised on the construction of this will have already been adjudicated; although the precise point now to be determined has not before directly arisen.
At the time of the sheriff’s sale, Medcef Eden junior had no estate in the part devised to Joseph. He had but a bare possibility of a future estate. This, as we have seen, has been adjudged. Upon the same principle, Joseph had no present estate or right of property, but a mere possibility of a future estate or right, in the share devised to Medcef Eden junior. Joseph would have ' had an estate, in the event of his surviving Medcef; but that contingency did not occur, and he therefore took nothing. Nor did any estate vest in the brother and sister of the testator; for the devise to them was void. Medcef alone had an estate at the time the sheriff sold, and the question is as to its nature and extent.
On looking through the decisions heretofore made on this will, it is entirely clear that they all proceed upon the supposition that Joseph and Medcef each took, an estate in fee in his own part or share of their father’s estate. I do not mean by this an estate in fee simple, properly speaking—a pure inheritance, free from any and every qualification or condition. Estates in fee, are not thus restricted in their nature. Every estate which may pass to heirs general by descent, and continue forever, is a fee; the owner having the entire property in himself. Such an estate may be a pure/ee simple ; (4 Kent's Comm. 5, 5th ed.; 2 Bl. Comm. 104, 106; 1 Cruise's Dig. 68, §§ 42 to 80;). or it may be a qualified, base or determinable fee. The latter is an estate which may continue forever, and is liable to be determined, without the aid of a conveyance, by some act or event circfimscribing its continuance or extent. Though the *605 object on which it rests for perpetuity may be transitory or perishable, yet such an estate is deemed a fee, because, as is said, it has a possibility of enduring forever. A limitation to a man and .his heirs, so long as A. shall have heirs of his body; or to a man and his heirs, tenants of the manor of Dale; or till the marriage of B.; or so long as St. Paul’s church shall stand, or a tree shall stand, are a few of the many instances given in the books of this species of fee. (4 Kents Comm. 9; 2 Bl. Comm. 109; 1 Cruise’s Dig. 78, §§ 81 to 86 ; Idle v. Cooke, 2 Ld. Ray. 1148.) It is sometimes, but inaccurately, called afee simple limited and qualified. (1 Preston On Estates, 430.) Thus, Lord Coke says, “ he that hath a fee simple conditional or qualified, hath as ample and great an estate as he that hath a fee simple absolute ; so as the diversity appeareth between the quantity and quality of the estate.” (1 Inst. 18, a.; and see 10 Rep. 97, b.; Plowd. 29, 557; Vaugh. Rep. 269, 270.)
The material difference between a fee simple and other fees is, “ that the former estate will, the latter estate may, continue forever.” (1 Preston On Estates, 429,431.) Mr. Preston gives numerous examples of determinable fees; such as limitations to a man and his heirs, until debts shall be paid, or until default in their payment shall be made; and he adds: “ There is scarcely any event, (being a lawful event,) and to happen within the rule prescribed against perpetuities, which may not be made the cause of the determination of this fee; as death, without having had, or without leaving issue” &c. (Id. 431, 433.)
“ All fees,” says chancellor Kent in his commentaries, “ liable to be defeated by an executory devise, are determinable fees, and continue descendible inheritances until they are discharged from the determinable quality annexed to them, either by the happening of the event or a release.” (4 Kent’s Comm. 9, 10; 2 Bl. Comm. 173.)
These authorities might suffice to show the true character of the estate devised to Medcef Eden junior in his share: that it was a limited and determinable fee, the whole estate, however, being vested in him. But the books are full of cases which have been adjudged on these principles. The case of Pells v. Brown, *606 (Cro. Jac. 590,) was very much like the present. There, lands were devised to Thomas and his heirs forever, but if he died without issue, living William, then to William and his heirs forever. And all the justices resolved that Thomas had a fee, subject however to the limitation in favor of William, which was a valid executory devise. That virtually decides two questions which arise on this will, viz. 1st. That Medcef Eden junior took a fee in the share devised to him, as Joseph also did in his; and 2d. That the devise over to the surviving brother was valid as an executory devise, and was therefore a limitation upon the previous fee. The first fee could not be a fee simple absolute, for it was qualified, limited and restrained by the devise over to the survivor, in case of death without issue.
The doctrine of Pells v. Brown has been uniformly followed, and numerous decisions have been made upon the same principle. (Fosdick v. Cornell, 1 Johns. Rep. 440; Jackson v. Blanshan, 3 id. 292; Anderson v. Jackson, 16 id. 382; see also Doe v. Wetton, 2 Bos. & Pull. 324; Ray v. Enslin, 2 Mass. Rep. 554; Holmes v. Holmes, 5 Binn. 252 ; 1 Roll. Abr. 835, pl. 4: Doe v. Webber, 1 Barn. & Ald. 713.) In Wilkes v. Lion, (2 Cowen, 355,) Chancellor Sanford, speaking of the share primarily devised to Joseph Eden, remarked, that he was prepared to say the will gave to Joseph “ a fee, determinable on his death without issue then livingand such he understood to have been the opinion of the court of errors in Anderson v. Jackson. Senator Tracy, also, in the case of Jackson v. Waldron, (13 Wend. 204,) alluding to the estate which Joseph took, said: “ What this estate was, admits I think of no doubtit “ has been repeatedly decided by this court to be a determinable, qualified or base fee.”
Now, whatever estate Joseph took in his share, Medcef had the like in the part devised to him. That was in no sense a mere life estate, nor a fee simple, but an estate determinable on a contingency, and yet one which might last forever; in other words, a “ determinable, qualified or base fee.” By virtue of the sheriff’s sale to Wortman, he acquired all the estate of which Medcef was then seised. Had Medcef died without issue, in the lifetime of Joseph, the estate thus acquired by Wortman must *607 have ceased, and Joseph would have taken an absolute fee simple therein. This was virtually adjudged in Wilkes v. Lion, (2 Cowen's Rep. 333.) But Joseph died first, and when that event occurred, the fee simple vested in Wortman. Medcef, therefore, at the time of his death in 1819, had nothing upon which his will could operate, and the plaintiffs can make no valid claim under that will.
I am of opinion that the defendant is entitled to judgment upon the verdict.
Ordered accordingly.