Ranney, J.
Two grounds of defense are insisted upon in this case, and both are claimed to be perfect.
*214 1. It is insisted that the defendant has a perfect legal title to the land in controversy, in virtue of the sale for taxes, made to JesseLoring, in 1827, and under which the defendant claims.
2. That the title of the lessor of the plaintiff is insufficient to-warrant a recovery.
It is agreed that-the tax sale, upon which the defendant relies, is in all respects regular, if it is sufficiently shown by the record that the return of delinquent taxes for the year 1826 was sworn to-by the collector.
The affidavit annexed to that return is in these words :
“ I, Jesse Loring, collector of taxes of Washington' county, do-solemnly swear that the foregoing list of delinquencies are, to the best of my knowledge and belief, truly stated, and that the reasons for returning such taxes delinquent, as noted thereon, do, as I verily believe, truly exist.
“Jesse Loring, Collector W C.”
By the law then in force, 2 Ch. Stat. 1493, sec. 2, the collector was-required to sign the delinquent list, “ and testify to the correctness-of the same, under oath or affirmation,” to be administered by the anditor.
On referring to the forms prescribed by the general assembly, to-be used by the officers engaged in the assessment *and collection of taxes, 2 Ch. Stat. 1491, it will be seen that the affidavit signed by the collector, as copied above, is in the exact form there required ; but the record contains no certificate of the auditor that the collector was in fact sworn by him. Was this indispensable to the validity of the sale ? If it be true, as claimed by the plaintiff’s counsel, that “the decisions in Ohio must control sales for taxes under our own statutes,” there is no difficulty in saying that this omission (if such it is) is not fatal to the sale, and that the title can not, for that reason, be invalidated.
The very question here presented was made and decided in the case of Winder’s Lessee v. Starling, 7 Ohio, 190, pt. 2, arising upon a sale made in the same year, and under the same legislation, as the one now before us. The case was determined upon an agreed statement of facts; and Judge Hitchcock, who delivered the opinion of the court, states the question to be whether it sufficiently appeared, from, the record, “ that the proper officers were sworn to the correctness of the delinquencies returned by them on the tax *215 duplicate of 1826 and 1827.” Although the report does not contain the agreed statement in full, we have been furnished with it from the record of the case, from which it appears that the only evidence before the court, was an affidavit subscribed by the collector, of which the one in the present case is a literal copy. There was no certificate of the auditor that the oath had been in fact administered. After a somewhat extended review and comparison of the several provisions of the law, the court came to the conclusion that the leading object of the oath was to satisfy the auditor of the correctness of the return, as laying the foundation for a settlement by the collector with the several treasuries for which the moneys had been by him collected, although it is admitted that the land could not be forfeited to the state without a substantial compliance with the law in this particular. With this necessity conceded, it is added: “Although there is no explicit statement by the auditor that he administered the oath to the treasurer or collector, yet there is all the evidence of this *fact, and the only evidence which the legislature have thought proper to require by the statute or in the forms prescribed. Whether these forms are the best that could be devised, it is unnecessary to inquire. They are prescribed, and so long as the revenue officers pursue them, nothiug more can be required at their hands.”
It is true, it is said, the evidence leaves no doubt upon the mind that the delinquent lists were sworn to; yet, as the agreed ease contained no evidence upon the point but the auditor’s record ; as it was constantly conceded that all the substantial requirements of the law must appear by the record to have been complied with ; and as it is well settled that parol evidence is not admissible in aid of the record to support the sale (Lessee of Kellogg v. McLaughlin, 8 Ohio, 116), it is very clear that this remark had relation to the conviction produced by an inspection of the record alone, and does not imply that it arose from other evidence outside of it in the case. The question is thus disposed of upon authority. Upon principle it is equally clear. When the duplicate was placed in the hands of the collector, he was required to be charged with the full amount appearing upon it. Upon his subsequent settlement with the auditor, he was to be credited with such taxes as he had been unable to collect, and the auditor was then required to certify upon the list the amount of money in the hands of the collector to the state, county, etc., which the latter was required *216 to pay over against a specified day. Before this credit could be allowed or certificate made, the auditor must be satisfied, by the oath of the collector, of its correctness. To have allowed the credit or made the certifiicate without this, would have involved him not only in criminal neglect of duty, but actual misfeasance. Under such circumstances, unless the statute makes written evidence indispensable, the officer will be presumed to have done his duty until the contrary appears. 1 Greenl. on Ev. 51; Matthews on Presump. 36. The law will presume all to have been rightly done, unless the circumstances of the ease overturn this presumption, *and consequently, as stated by the Supreme Court of the United States, in Bank of United States v. Dandridge, 12 Wheat, “acts done which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.”
Instances of the application of this doctrine under a variety of circumstances may be found in Williams v. E. India Co., 3 East, 192; Kelly v. Connell, 3 Dana, 532; Wheelock v. Hall, 3 N. H. 310; Brown v. Connelly, 5 Blackf. 390; Hartwell v. Root, 19 Johns. 345; Jackson v. Shaffer, 11 Johns. 513; 9 Conn. 110.
Facts j>resumed are as effectually established as facts proved, where no presumption is allowed; and hence, in accordance with this long-established rule of evidence, the court, in Lessee of Winder v. Starling, were entirely justified in saying that the act of the auditor in allowing the credit, and making the certificate, which could only lawfully be done after the delinquent list had been verified by the collector, was presumptive proof that the oath had been administered.
This view of the validity of the defendant’s title is decisive of this case, and renders it strictly unnecessary to go further and consider the questions presented upon the title of the lessor of the plaintiff. But as they have been argued and considered, and as we are advised they may bo involved in other cases now pending in the district court, we have concluded to express our opinion upon the most material of them.
Paschal N. Smith died in 1805, seized of the land in controversy.
By his will, he devised to his wife, Hester Smith, one-third of his estate. Ho directs that the residue be equally divided between his- four children, Harriet, Augusta, William Temple, and Hester Georgiana, and should any of my said children die before they *217 ¡arrive at the age of twenty-one years or without issue by lawful marriage, then their part or parts to go to the survivors, or survi•vor, their heirs and assigns forever; and should it please God that •all my above said four ^children should die before they ■■come to be of age, that is, twenty-one years, or without having issue by lawful marriage, then my will is that my estate, both real ¡and personal, which I have hereinbefore devised to my said four •children, shall go to my dear wife, Hester, and to her heirs and assigns forever.”
He then appoints his wife, Hester, and his nephews, Benjamin Strong and John Aspinwall, merchants of the city of New York, his executors, “who are hereby authorized and empowered, at their discretion, to make sale of any real as well as personal estate I may leave, or that may belong to me at my decease.”
It is admitted that all the children, except Hester Georgiana, died in the lifetime of their father, without issue, and not having attained the age of twenty-one. Hester Georgiana married, attained the age of twenty-one, and died without issue.
Hester Smith, the widow, and one of the executors, survived all the children, and died in 1823, having by her will appointed the two surviving executors of her husband her executors, with power to sell.
The lessor of the plaintiff claims the land by a deed from Strong .and Aspinwall, the surviving executors of Paschal N. Smith, dated in 1835.
It is not doubted by counsel upon either side that Hester Georgiana, the last surviving child, took two-thirds of the estate, under the will. The question is, whether, at her death, it descended to her heirs at law, or passed under the will to the widow.
If the words of the will are to be construed literally and disjunctively, it is plain that both of the contingencies did not happen so as to vest the estate absolutely in her, and prevent its passing to the widow on her death. She did not die before attaining the age of twenty-one, but did die without issue. On the ■other hand, if both contingencies must have happened, to defeat her estate, it is equally plain that when she attained the age of twenty-one her estate became absolute, *and passed at her death to her heirs at law. No technical or artificial rule can settle this question. The intention of the testator, to be ^gathered from the language used by him, is absolutely binding upon us. *218 Rut this by no means authorizes us to reject the opinions of other courts, guided by the same considerations, in determining the construction of similar language. If their opinions are found to be unanimous, it furnishes very strong evidence of the received and general sense of the words, and becomes a rule of property not to-be departed from but for weighty and convincing reasons.
The English cases are all collected by Mr. Jarman, in his-treatise on Wills, vol. 1, p. 443; and he correctly states the result, of them thus : “ It has long been settled that a devise of real estate to A and his heirs, or which would be the same in effect, to A indefinitely, and in case of his death under twenty-one, or without, issue over, the word “ or ” is construed “ and,” and consequently the estate does not go over to the ulterior devisee, unless both the specified events happen.”
In such case, there is considered to be but one contingency, consisting of two branches, which can not be separated without doing manifest violence to the intention of the testator, when the devisee dies leaving issue but before attaining the age of twenty-one years. By making the event of the devisee leaving issue a condition of his retaining the estate, he evidently intends that a benefit shall accrue to such issue through their parent, and it is highly improbable that he should mean this benefit to depend upon the-contingency of the devisee attaining majority; while, upon the other hand, it seems most consonant to his intention, especially when the devise is to a child, to suppose him not to intend to tie-up and embarrass the estate in the hands of the devisee after he acquires disposing competency, and an ability and - discretion to-manage the estate. In short, it can not be supposed that he intended, in any event, to deprive the issue of his child of the property, while it is equally improbable he ^intended to prevent the child from disposing of the property absolutely after he should attain his majority. These leading objects of the testator can only be reached by rejecting the disjunctive “ or,” or giving it the-copulative meaning, and'holding that the happening of either of the contingencies, of issue or majority, will vest the estate absolutely in the devisee.
In this country an entire unanimity of judicial opinion is found to exist. Jackson v. Blanshan, 6 Johns. 54, is a leading case, and in point. The words of the will were: “ But if any one or more of my above-named children should die before they arrive at full agey *219 or without lawful issue, that then his, her, or their part or share of my estate shall devolve upon and be equally divided among the-rest of my surviving children.” Matthew, one of the sons, died without issue, after full age, and after he had sold the estate. It was held that the devise to him became absolute, as soon as he arrived at majority, though he had no lawful issue, and that the devise over did not take effect. The able opinion of Ch. J. Kent contains a review of all the cases there decided, and the case seems to have been the more maturely considered from the fact that the-court had before (3 Johns. 292), upon the point incidentally arising, expressed a different opinion.
The question has also been decided in Pennsylvania, in Englefield v. Woelpart, 1 Yates, 41, and Holmes v. Holmes, 5 Binn. 252. In Massachusetts, in Ray v. Enslin, 2 Mass. 554, and Carpenter v. Heard, 14 Pick. 449. In Maine, in the case of Sayward v. Sayward, 7 Greenl. 210, and in Maryland, in Beale v. Deale, 7 Gill & Johns. 216.
Applying these principles to the case before us, we are of opinion that the estate became absolute in Hester Georgiana when she arrived at the age of twenty-one years, and descended to her heirs upon her death, and that the devise over to the widow never took effect.
Did the power given to the executors of P. N. Smith, to sell and convey his real estate, subsist and continue to the *time of the execution of the deed to the lessor of the plaintiff? This deed was made over thirty years after the will was proved, and many years after all the members of the testator’s family provided for in it, were dead—the last surviving child having died in 1816, and. the widow in 1823. In determining this question, we do not find-it necessary to decide, whether, under our legislation, the power devolved upon the surviving executor. It is enough for the purposes of this case, that it does not appear, from any evidence given upon the trial, that the executors continued charged with any duty by the will which remained unaccomplished, and which made-a sale of the property necessary. If the estate owed debts, they are presumed satisfied, from the great lapse of time; and if, from the will, it is possible to infer that the testator intended his executors to provide for the support and maintenance of his family (which we see very little reason to suppose), still, the power must,, of necessity, cease upon the death of those intended to be provided. *220 for. In the construction of these powers, as well as in all the ■other provisions of the will, the intent of the testator is to be regarded, and, whenever it appears that the object for which the power is given has been accomplished, or has become impossible, the power itself ceases to exist. Jackson ex dem. Ellsworth v. Jansen, 6. Johns. 73; Ricard v. Williams, 7 Wheat. 59; Sharpstien v. Tillow, 3 Cow. 651.
A now trial will be awarded, the costs to abide the event of the ■.suit.