Lessee of ELIZABETH HAUER *against* PETER
SHEETZ.

IN an ejectment for lands in *Dauphin*, the jury found the following special verdict:

" That *Peter Sheetz*, the father of the lessor of the plaintiff " and of the defendant, being seised in his demesne as of fee, " of the lands and tenements in the declaration of ejectment " stated and mentioned, on the 8th day of *April* 1795 made " his last will and testament, *prout* the copy thereof hereunto " annexed, and on the 10th day of *April* in the same year, " did make a codicil in writing to his last will and testament, " *prout* the copy thereof hereto annexed, and died leaving " the said *Francis*," (in the will and codicil mentioned) " the " said *Peter* the defendant, and the said *Elizabeth* the lessor " of the plaintiff, his only children; that the said *Francis* en- " tered into and took the possession of the lands and tene- " ments in the said declaration mentioned, and being so " thereof possessed, died *without lawful issue*, but *after he*

if *P* died under the lawful age of 21 or without issue, his share should go to *F*, his heirs and assigns; and in either case, the *survivor of his said two sons* should *then* pay 500*l.* to the testator's daughter or her heirs. By a codicil he ordered *F.* not to sell any part of the land before he was 30, when he might do with it as he pleased.

*Held* that *F.* took a fee, with an executory devise to *P.*, to take effect upon *F.*'s dying under age *and* without issue; and *F.* having attained 21, and then died without issue, the estate descended to *F.*'s heir at law.

" *was above the age of twenty-one years,* intestate; that the
" said *Francis Sheetz* was born on the first day of *April* 1775,
" and was killed on the 28th of *December* 1797. That the
" said *Elizabeth,* the lessor of the plaintiff, is the sister of
" the whole blood of the said *Francis,* and that the said
" *Peter* the defendant is the brother of the half blood of the
" said *Francis,* being the son of the said *Peter* the testator,
" by another venter. That the said *Elizabeth.* demised the
" lands and tenements in the said declaration mentioned,
" to the said *Timothy* for the term therein expressed; that
" the said *Timothy* did enter, and was thereof possessed;
" and that the said *Peter* did enter and eject him therefrom;
" and if on the whole matter, it shall seem to the court that
" the said *Peter* is guilty of the trespass and ejectment, they
" then find him guilty, &c.; but if on the whole matter, it
" shall seem to the court that the said *Peter* is not guilty,
" then they find him not guilty, &c."

By the will referred to, the testator, after directing the
payment of his debts, made the following devise. " I give
" and bequeath unto my son *Francis Sheetz,* all that my
" plantation, and two tracts or pieces of land," (the premises
in the ejectment) " the one of them, and whereon I now
" live, is bounded by &c. and containing about three hundred
" and sixty acres, be the same more or less; and the other
" of said tracts, is situated or bounded by &c. and contain-
" ing about ninety five acres be the same more or less; both
" of the said tracts of land being situate in the township of
" *Heidelberg* and county of *Dauphin, to have and to hold the*
" *said two tracts or pieces of land, unto my said son* Francis
" Sheetz, *and to his heirs and assigns for ever,* subject to the
" payment of two thousand three hundred pounds lawful
" money of *Pennsylvania,* in gold and silver coin, which said
" sum it is my will, and I do give the same unto my son
" *Peter Sheetz,* and to his heirs and assigns for ever, and to
" be paid in manner following, to wit: *my said son* Francis
" Sheetz *shall pay at the expiration of one year after my de-*
" *cease, the sum of one hundred pounds, and then the sum of*
" *one hundred pounds yearly, for three years successively,*
" *and then the next year the sum of five hundred pounds, and*

" *the next year the sum of one hundred and fifty pounds, and*
" *then so on the sum of one hundred and fifty pounds yearly*
" *and every year, until the whole sum of twenty three hun-*
" *dred pounds shall be fully paid.*"

He then gave to his son *Francis,* " with the said planta-
" tion, and to his heirs and assigns," several horses and
cows, a quantity of grain, and some farming utensils; after
which came the following devise to his wife. " I give and
" bequeath unto my wife *Catharine* during the term of her
" natural life, my house and lot she now lives in, in the town
" of *Heidelberg,* and also all the money and effects which is
" mentioned and contained in a certain article of agreement
" or instrument of writing, made between her and me, bear-
" ing date the 19th day of *February* 1789, and recorded, &c.
" and which I have therein promised and agreed to pay and
" deliver her during all the term of her natural life, she pay-
" ing the taxes and ground rent thereon to become due; and
" which said money in said agreement mentioned, being
" twenty four pounds yearly, shall be paid her on the first
" day of *May* yearly, during the term of her natural life, *by*
" *my said son* Francis Sheetz; *and which my said plantation*
" *shall always be subject to.*" He also gave his wife during
her life, the interest of six hundred pounds of his money,
which he directed his executors to invest; and he then made
this bequest to his daughter, the lessor of the plaintiff. " I
" give and bequeath to *Elizabeth,* now the wife of *John*
" *Hauer,* the sum of one thousand pounds lawful money of
" *Pennsylvania,* in gold and silver coin, nevertheless to be
" deducted out of the said one thousand pounds, what I have
" already given and advanced my said daughter *Elizabeth*
" and son-in-law *John Hauer,* which said money shall be
" paid my said daughter *Elizabeth* in manner following, to
" wit, three hundred pounds thereof, (besides what they now
" have) within six months after my decease, and then the
" sum of one hundred pounds yearly and every year, until
" the whole sum shall be paid." The money was to be paid out
of the proceeds of an estate which he ordered his executors
to sell; " but in case my said daughter *Elizabeth* should de-
" part this life before the said one thousand pounds be fully
" paid her, then it is my will that my said executors shall

" retain the rest in their hands, and put the same to interest
" for the children of my said daughter *Elizabeth*, until they
" be of lawful age of twenty-one years, and it shall then be
" divided between them, share and share alike."

He also gave to *Francis*, " and to his heirs and assigns,"
the half part of all his clothing, linen, yarn, beds, and bed-
steads: the other half, together with all the rest and residue
of his moveable goods and effects, and money whatsoever
and wheresoever, not before given and bequeathed, it was
his will that his executors should make a public vendue of
the same, and the money arising therefrom he gave and
bequeathed to *Peter*, and to his heirs and assigns for ever.
" After the decease of my said wife *Catharine*, I give and
" bequeath the said sum of six hundred pounds, which my
" executors shall have so put to interest, unto my said two
" sons *Francis* and *Peter Sheetz*, to be equally divided
" between them, share and share alike. Also after the de-
" cease of my said wife *Catharine*, I give and bequeath unto
" my said two sons, my said house and lot of ground, and
" wherein my said wife *Catharine* now lives, situate in the
" said town of *Heidelberg*, to hold to them my said two sons,
" their heirs and assigns for ever. *But in case my said son*
" Francis Sheetz *shall die under the lawful age of twenty-one*
" *years,* OR *without lawful issue, then and in that case I give*
" *my said son* Francis's *share in my said* WHOLE *estate, unto*
" *my said son* Peter Sheetz, *and to his heirs and assigns for*
" *ever;* and in case my said son *Peter Sheetz* shall die under
" the lawful age of twenty-one years, or without lawful issue
" as aforesaid, then and in that case, I give and bequeath
" my said son *Peter's* share in my said whole estate, unto
" my said son *Francis Sheetz*, and to his heirs and assigns
" for ever. But in either case, the *survivor of my said two*
" *sons* Francis *and* Peter, *shall then pay unto my said daugh-*
" *ter* Elizabeth *or her heirs, the sum of five hundred pounds,*
" *lawful gold and silver money, but to be taken out of the* LAST
" *payments of my first mentioned plantation.*"

The *codicil* to the will contained an additional bequest
of a servant man and boy to *Francis*, he to give one of
his best horses to *Peter* when he should arrive at twenty-
one; and then came the following clause. " *And I do hereby*

APPENDIX.

Lessee
of
HAUER
*v.*
SHEETZ.

Appendix.

Lessee
of
Hauer
v.
Sheetz.

" *order, and particularly request, and do not allow my said*
" *son Francis Sheetz, to sell any part of the land, which I*
" *have in my said will given him, until he arrives at the age*
" *of* THIRTY *years, and then he may do with the same as he*
" *pleases.*"

The judgment of the Supreme Court having been rendered
for the defendant, the plaintiff brought this writ of error,
upon which the single question was, whether *Francis Sheetz*
took a fee-simple in the land devised to him, which became
absolute upon his arriving at twenty-one.

*Tilghman* and *Lewis* argued for the plaintiff in error.

*Francis Sheetz* took a fee by the devise to him, his heirs
and assigns. The subsequent words, that in case he should
die under twenty-one or without issue, &c. gave an executory
devise to *Peter,* to take effect upon *Francis* dying under age
*and* without lawful issue; and as he attained twenty-one, the
fee became absolute, unless limited in one respect by the co-
dicil, as to selling before thirty.

It cannot be contended that there is any thing in the will,
to reduce the fee of *Francis* to an estate tail with a vested
remainder to *Peter;* on the contrary it was agreed below that
he took a fee. The only question is, on what contingency
was it to go over to *Peter*, by way of executory devise.

If it depended merely on the devise to *Francis*, and the
first part of the devise over, as far as to " *Peter Sheetz* and
to his heirs and assigns for ever," the contingency would
clearly be confined to a dying under twenty-one *and* without is-
sue. *Or* must be construed *and*, otherwise three consequences
result, which the testator could not have intended. First, *Fran-
cis* might have died under age *leaving issue*, who would not
have taken the land. 2dly, The words *under lawful age* must
be rejected as having no meaning, the estate going over if he
died without lawful issue at any time after twenty-one. 3dly,
He could not charge the land after twenty-one for the payment
of the money to *Peter*. The grammatical construction there-
fore violates the plain intent of the testator, which has always
been held a good reason for rejecting it, and adopting the
other. *Price* v. *Hunt* (*a*), *Walsh* v. *Peterson* (*b*), *Framling-*

(*a*) *Pollexf.* 645.　　　　　　　(*b*) 3 *Atk.* 193.

*ham* v. *Brand* (*a*), *Barker* v. *Suretees* (*b*), *Fairfield* v. *Morgan* (*c*). In *Cheeseman's Lessee* v. *Wilt*, in this court in the case of a will, and in *Massey's Lessee* v. *Rawle* in the Court of Appeals in the case of a deed, the same construction prevailed.

But the adoption of this as the contingency, it was said, opposes the general intent of the testator, and attributes to him a most improbable supposition, that *Francis* could have issue before twenty-one. And it was also said, that there are two other points of time for the devise over to take effect, one in the will, namely the death of *Francis* without issue living at that time, and the other in the codicil, his dying under thirty and without issue, one of which must be adopted.

It is to be premised, that as the first words give a plain estate in fee, absolute at twenty-one, it is not to be defeated but by words equally plain, or by necessary implication; such implication as is necessary to effectuate the *manifest* general intent of the testator. *Doe* v. *Perryn* (*d*), *Evans* v. *Astley* (*e*), *Chapman* v. *Brown* (*f*).

The general intent it is supposed was to exclude the lessor of the plaintiff; the evidence of which is, that the testator did not like her husband, and that she gets a legacy of 500*l.* out of the land, which is inconsistent with an intention that she should have the land. The first evidence of this intention does not appear in the will. The husband gets the 1000*l.* legacy, if it is paid to his wife during her life. The other has not the least weight, because she gets the legacy only in the event of the executory devise taking effect, which is no argument against her having the land by descent, if it does not take effect.

The improbability that the testator could have supposed that *Francis*, who was then twenty, might die under age, leaving issue, is an objection founded merely in conjecture. He had a year to marry, and to leave his wife enceint, which was not an improbable event. In *Fairfield* v. *Morgan*, the devisee was within fifteen months of age, and the objection,

(*a*) 3 *Atk.* 390.  (*d*) 3 *D.* & *E.* 493.
(*b*) 2 *Stra.* 1174.  (*e*) 3 *Burr.* 1574.
(*c*) 5 *Bos.* & *Pul.* 38.  (*f*) 3 *Burr.* 1634.

though made, did not receive the least attention from the court.

The argument for confining the dying without issue, to the time of *Francis's* death, is founded upon the testator's direction, that the *survivor* of his two sons should *then* pay the 500*l.* to *Elizabeth;* from which it is inferred, that *Peter* was to take upon the death of *Francis*, and therefore the dying without issue meant issue living at that time. The whole turns upon the word *survivor*. Now the executory devise to *Peter*, whether it took effect at one time or another, did not depend upon his *surviving Francis*. If he had died before *Francis*, and before the estate became absolute, the chance of benefit by the executory devise would have descended to his heirs. *Jones* v. *Roe* (a). If he had died before *Francis*, and then *Francis* died under age and without issue, the land would have gone to *Peter's* children, and yet *Peter* would not have been survivor. *Survivor* is used with reference to the subject matter, and means the son, or his representatives, who should take the whole; otherwise if *Peter* died, and then his children took, *Elizabeth* would lose the legacy. The only instance in which that term has been held to shew an intention that the estate should go over upon the death of the first taker, is where the person over took but a life estate. *Roe* v. *Jeffery* (b). Then, is not an adverb of time annexed to the actual survivorship of *Francis* or *Peter*, for the legacy is to be paid out of the *last payment* with which the land was burthened; but it is annexed to the event of the whole estate, vesting in one of the sons, or his heirs. The term *survivor*, however is as well satisfied by our construction as theirs. The question is, at what time survivor? and we say upon the death of *Francis* under twenty-one and without issue.

The substitution of thirty in the codicil, for twenty-one in the will, is wholly without warrant, except as to the single power of selling. In fact, the restraint in the codicil, be it legal or otherwise, shews conclusively that the testator intended *Francis* should have an absolute fee-simple at twenty-one. It presupposes a right in *Francis* to sell at that time, and attempts to restrain it; but the restraint, even if valid, does not

(a) 3 *D. & E.* 88.          (b) 7 *D. & E.* 595.

affect the quantity of *Francis's* estate; it would descend, and might be devised, in perfect consistency with the restraint. On their construction of the codicil, the restraint was unnecessary; for if it substituted thirty for twenty-one in all respects, *Francis*, unless he had issue, could not sell until thirty. There is not, moreover, a word in the codicil about issue; there is no contingency stated, or in view; even if he had issue, the testator intended to prohibit his selling. The estate is to become free, even from this restraint, at thirty. He may then do as he pleases with it: and what becomes of the argument, that it was to go over to *Peter* upon the death of *Francis* without issue living at that time, and of the argument for substituting thirty for twenty-one, which will make it go over upon his dying under thirty *or* without issue, that is at any time afterwards? The codicil applies only to the land given to *Francis*, and not to *Peter's* personalty, which conclusively shews that it does not respect the vesting of the fee by the will, for the limitation over is there the same to *Peter* as to *Francis.*

These supposed evidences of intention fall infinitely short of declaration plain, that the testator intended to defeat the fee of *Francis* after twenty-one, even if there was nothing to counteract them. But here the fee is strengthened by the strongest intention in its favour.

1. The limitation over extends to the horses, wagons, clothing, &c. of *Francis*, in their nature perishable, and which would not be in existence long. Would the testator make these the objects of an executory devise, to take effect at the distance of ten years afterwards?

2. As there are the same words in the devise over of *Peter's* estate to *Francis*, the personalty given to *Peter* is subjected to the same contingency. Did the testator intend that he should merely have the use of it up to the time of his death?

3. There is no stronger mark of an absolute fee-simple than burthening the devise with the payment of money. On principles of justice as well as of law, if a man pays for a thing, he ought to have it. By our construction, *Francis* would not have to pay until the fate of the executory devise was known, a year after the testator's death, when he would

be of age. By the defendant's he must go on paying, without making terms or conditions, until near thirty, by which time he would have paid upwards of 1500*l.* to *Peter,* besides the mother's annuity; and then if he died without issue, *Peter* would take the land and the money too. This cannot have been the testator's intention. How could *Francis* have paid for the land without a fee? Who would have trusted him, if on dying under thirty without issue, the land was to go over?

*Ingersoll* argued for the defendant in error. He admitted that the intent of the testator must govern the construction; that there was no magic in particular words further than as they shewed the intent; and that *or* might be construed *and,* and *vice versa,* in order to effectuate the testator's purpose. But he contended, that for this very reason, cases upon wills had very little weight unless they were exactly in point, as was said in *Roe* v. *Grew* (*a*). They may serve to guide with respect to general rules of construction. But the intention being the polar star, it alone is the particular rule, which ought to be the most critically observed. *Gulliver* v. *Poyntz* (*b*). No technical form is necessary to convey the testator's meaning. No detached part of a will can be considered as giving the law to the rest. The meaning is to be collected from the will in question, by attending to the several parts of it, and by comparing and considering them together, without relying in any great degree upon decisions on other wills, or upon a particular in opposition to a general intent. *Strong* v. *Cummin* (*c*), *Throgmorton* v. *Holyday* (*d*), *Hay* v. *Earl of Coventry* (*e*), *Bridgwater* v. *Bolton* (*f*), *Robinson* v. *Robinson* (*g*), *Doe* v. *Dacre* (*h*). In this case *or* cannot be construed *and,* without defeating the testator's intention, as it is collected from the whole will.

A clear intention to keep the estate from the lessor of the plaintiff, or in other words, that it should not go to her upon the death of *Francis,* is manifest from his giving her a legacy out of this land in that event. The will contains evidence

(*a*) 2 *Wils.* 324.     (*d*) 3 *Burr.* 1625.     (*g*) 1 *Burr.* 50.
(*b*) 3 *Wils.* 143.     (*e*) 3 *D.* & *E.* 86.     (*h*) 1 *Bos.* & *Pul.* 256.
(*c*) 2 *Burr.* 770.     (*f*) 1 *Salk.* 237.

that he disliked her husband, as in case of her death, he gives even the remnant of the 1000*l.*, then unpaid, to his executors for the use of her children. He does not contemplate the death of *Francis* except under such circumstances as would either give the estate to *Peter* or to his own issue, in neither of which cases would she get it. His intention throughout was therefore that she should be excluded.

There are three periods at which the testator may be said to have intended that the devise over should take effect.

1. Upon a death under age *and* without issue, which is the plaintiff's argument. This however is not a plain, but an improbable intention, because the testator could not have contemplated a dying with issue under that age. In all the cases which have been cited, where *or* has been construed *and*, the reason for doing it has been a supposed intention in the testator not to leave the issue destitute, which intention could not be carried into effect by any other construction. But if the testator could not have contemplated issue, the argument falls. *Francis* was twenty years and eight days old at the date of the will, and was at that time unmarried; it was but a possibility that he should have issue before twenty-one, and therefore it cannot be said to have been plainly or even probably the intention of the testator to have provided for such issue.

2. Upon his death, without issue living at that time. This will support the general intent to keep the estate in the blood of *Francis*, or to give it over to *Peter* at the death of *Francis*, and thus exclude the lessor of the plaintiff. There is strong evidence that by the will the failure of issue was limited to that time, because the estate was to go over to *Peter* as survivor. An estate to *A* in fee, and if he dies without issue living *B*, then over, is a good executory devise. It is *Pells* v. *Brown* (a). The failure of issue is limited to the death of *A*. So here *Peter* as survivor was to pay 500*l.* to *Elizabeth*. It is not the survivor or his *heir* that was to pay, according to the plaintiff's argument, but it is " the survivor of my two " sons shall then pay," which shews it to have been personal to the survivor, and in his life time. It moreover points out

(a) *Cro. Jac.* 590

the time when it was to go over, *then*, being in this case an adverb of time, referring to the death of *Francis*, as was ruled in *Wilkinson* v. *South* (*a*). It is like the case of *Nichols* v. *Skinner* (*b*), which was a devise of portions of bank stock to the testator's four children, payable at their respective ages of twenty-one or marriage, and in case any of them should die before the time of payment, or should die without issue, then his share to the survivor or survivors. This was held to be such a dying without issue as that the survivors could take, which must be in their lives, and therefore good. The same principle in *Hughes* v. *Sayer* (*c*). That there being real property in this case will vary the rule of construction, is not so clear, since the late doubts of *Forth* v. *Chapman* (*d*) expressed by lord *Kenyon*. The construction being sound as to the personal property devised to *Francis*, it is hardly reconcilable to reason, that a different construction of the same words in the same will can square with the testator's intention. It is certainly left in doubt by what lord *Kenyon* said in *Porter* v. *Bradley* (*e*), and in *Roe* v. *Jeffery* (*f*). *Daintry* v. *Daintry* (*g*), *Richards* v. *Lady Bergavenny* (*h*), *Knight* v. *Ellis* (*i*), *Denn* v. *Shenton* (*k*). 2 *Fearne Cont. Rem.* 195. 209. Throughout the will the testator intends that the land shall be taken by survivor, as in the case of the house devised to the wife for her life, which after her death is given to his sons as joint tenants.

3. If the last period is not intended, the codicil at least changes the period of twenty-one in the will, and substitutes thirty. Supposing the construction on the will to be that the testator intended an absolute estate at twenty-one, the codicil postpones it to thirty; and whether it be read, under thirty *and* without issue, or under thirty *or* without issue, the law is equally with the defendant. The restraint upon the power of selling means that until that time the estate should not be absolute.

The payments to be made by *Francis* before thirty, are of no consequence; because where a testator intends that the

| | | |
|---|---|---|
| (*a*) 7 *D. & E.* 557. | (*e*) 3 *D. & E:* 146. | (*h*) 2 *Vern.* 324. |
| (*b*) *Prec. in Ch.* 528. | (*f*) 7 *D. & E.* 595. | (*i*) 2 *Bro. Ch. Ca.* 577. |
| (*c*) 1 *P. Wms.* 534. | (*g*) 6 *D. & E.* 314. | (*k*) *Cowp.* 410. |
| (*d*) 1 *P. Wms.* 664. | | |

estate shall go over upon a certain event, charging the devisee with payments will not alter the event. *Francis* took the estate with the chance of having it absolutely in a certain event, which was worth the payment. It no where appears that the money was to be raised out of the estate, though it was charged upon it; and therefore it cannot be argued that the testator intended it should be absolute at twenty-one, in order that *Francis* might raise the money out of it.

TILGHMAN C. J. delivered the opinion of the court.

This case arises out of the will and codicil of *Peter Sheetz* deceased. Whether his son *Francis Sheetz*, also deceased, took an estate in *fee-simple* in the land devised to him, indefeasible on his attaining the age of twenty-one, is the question. If he did take such an estate, then the *plaintiff*, his heir at law, is entitled to recover; if not, the law is with the defendant.

The testator devised to his son *Francis* two tracts of land, " to have and to hold the same to him and to his heirs and " assigns for ever," subject to the payment of 2300*l.*, which he gave to his son *Peter*, to be paid as follows, viz: 100*l.* at the expiration of a year from the testator's decease, then the sum of 100*l.* for three years successively, the next year the sum of 500*l.*, the next year the sum of 150*l.*, and then each year 150*l.* till the whole should be paid. He also gave the said *Francis* sundry horses, cattle, sheep, implements of husbandry, and articles of household furniture. He gave his wife *Catharine* an annuity of 24*l.* a year for her life, to be paid by the said *Francis*, and charged the same on the lands devised to him. He also devised to his wife a house and lot for her life, and gave the same after her death to his sons *Francis* and *Peter* their heirs and assigns for ever. After that comes the following clause. " But in case my said son *Francis* shall " die under the lawful age of twenty-one years, or without " lawful issue, then and in that case I give my said son *Fran-* " *cis's* share in my said *whole estate* unto my said son *Peter* " and his heirs and assigns for ever; and in case my said son " *Peter* shall die under the lawful age of twenty-one years, " or without lawful issue as aforesaid, then and in that case " I give and bequeath my said son *Peter's* share in my said

" whole estate unto my said son *Francis*, and to his heirs
" and assigns for ever; but in either case, the survivor of my
" said two sons *(Francis* and *Peter)* shall then pay unto my
" said daughter *Elizabeth* (the plaintiff) or her heirs, the sum
" of 500*l.*, but to be taken out of the last payments of my first
" mentioned plantation."

By a codicil dated two days after the will, " he ordered and
" particularly requested, and did not allow his said son *Fran-*
" *cis* to *sell* any part of the land which he had in his said will
" given to him, until he arrived at the age of thirty years,
" and then he might do with the same as he pleased."

I will first consider the will, unconnected with the codicil;
and then examine them together. The first devise to *Francis*
is a fee-simple, expressed as clearly as words can make it; ac-
companied too with an obligation to pay large sums of mo-
ney, which is inconsistent with an intent to give any estate
less than a fee-simple. Afterwards came the *qualification*,
that in case he should die under twenty-one, *or* without issue,
then and in that case the estate should go over to his bro-
ther *Peter* in fee. Here is nothing inconsistent with the fee-
simple first given to *Francis.* But the question is, how
are these last words to be construed? They contain two con-
tingencies, a dying under twenty-one, and a dying without
issue. Must they *both* concur, before the estate passes to *Pe-
ter*, or may he take on the happening of either? We are not
without authorities to assist us in the construction. Those ex-
pressions have often been used in wills, and often received
the consideration of courts of justice; and from the case of
*Price* v. *Hunt, Pollexfen* 645, in the year 1684, down to that
of *Hawkesworth's Lessee* v. *Morgan*, determined by the court
of King's Bench in *Ireland*, whose judgment was affirmed in
1805 by the British house of lords, the word *or* in cases like
the present has been construed *conjunctively;* that is to say,
it has been held that the executory devise over did not take
effect, unless the first devisee died under twenty-one, and *also*
without issue. The same construction was made in *this* court
in the case of a *deed*, in *Massey's Lessee* v. *Rawle*, and in
the Supreme Court, according to one of the cases cited,
*Cheeseman's Lessee* v. *Wilt*, in the case of a will.

But the defendant's counsel insist that wills are not to be

construed according to *adjudged cases*, unless directly in point; that every will depends on its own circumstances, and every will shall be construed so as to carry into effect the intention of the testator, provided such intent be lawful. These principles are sound, and the authorities I have mentioned are founded on them; for in order to effectuate the intent of the testator, the word *or* is stripped of its usual *disjunctive* signification, and converted into a conjunction copulative. Why has this been done? Because, if it was construed *disjunctively*, the devisee, who was the first object of the testator's bounty, might die under twenty-one leaving children, and those children would be deprived of the estate, which would pass over to other persons. It is very natural that a man should give his son an estate in fee, and yet provide that it should go to a third person, in case his son died without issue, and before the age at which the law permitted him to dispose of it, either by contract or by devise; but that he should give him a fee-simple, and then deprive his children of it because he happened to die before twenty-one, is altogether unnatural and improbable. The cases therefore that have been cited on this subject, stand on a foundation not to be shaken.

But granting that these expressions are *generally* to be construed as I have mentioned, still it is said, if there are any other parts of this will which indicate a contrary intention, the construction may be different. Undoubtedly it may. Let us see then what more there is in the will. The defendant's counsel rely on one fact not mentioned in the will, but found by the special verdict, which may be properly taken into consideration. It is this, that at the time of making the will *Francis* was twenty years and eight days old, and therefore it is said, the probability of his having issue before twenty-one was so small, that his father cannot be supposed to have regarded it. I do not see the force of this argument. It was very *possible*, and not very *improbable*, that *Francis* might marry, and either have issue, or have a wife pregnant, in twelve months from his father's death. We are to construe this will according to the situation of things at *the time it was made*, without taking subsequent events into consideration. It is worthy of remark too, that in the last adjudged case which was cited, *Hawkesworth's Lessee* v. *Morgan* in 1805, the first devisee

wanted but fifteen months of being twenty-one years old, when the will was made. But no regard was paid to this objection.

Let us now see what effect the codicil will have, considered as connected with the will. *Francis* is restrained from *selling* his land till he attains the age of thirty. Whether this restraint on a fee-simple estate is consistent with the principles of law, is immaterial. We are endeavouring to discover the intent of the testator, and it is certain that he *intended* to lay the restraint. The defendant's counsel contend, that the age of thirty is to be substituted for the age of twenty-one annexed to the devise to *Francis* in the will, and then it will stand thus:—in case *Francis* dies without issue or before he attains the age of thirty, then and in that case *Peter* shall take. Now in the first place this is doing violence to the words of the codicil, for *Francis* was not to be restrained from *devising* the estate to whomsoever he might think proper, nor from any other act consistent with a fee-simple, save the power of *selling*. The testator must have had some reason for imposing this restraint. The most obvious one is, that he had discovered symptoms of a heedless and extravagant temper in *Francis*, which made it prudent to put it out of his power to *sell*, till he arrived at a very mature age; but it might be by no means necessary to debar him of the power of *devising* it, in case he died *before* thirty. But there are other parts of the will to be considered in deciding the effect of this codicil. If *Francis* had survived the age of twenty-one and lived to the age of near thirty, and then died, what in the mean time was to be done with the payment of his mother's annuity, and his brother *Peter's* legacy? They must have been paid. By the time *Francis* arrived at the age of twenty-nine, he would have paid 1720*l*. How was he to have raised this money, unless his estate in fee-simple had been absolute, on his attaining the age of twenty-one? And could the father have intended, that *Peter* should receive such large sums from his brother, and afterwards have all the land? It cannot be supposed. And yet it is to support an intent of this kind, that the words of the codicil are to be perverted from their natural meaning; whereas, if they are construed according to their obvious

sense, all inconveniences are prevented, and the will and codicil stand in perfect unison.

Upon the whole of this case it is the unanimous opinion of the court, that *Francis Sheetz* took an estate in fee-simple in the land devised to him, which became absolute when he attained the age of twenty-one years. Consequently the plaintiff, who is his sister of the whole blood, and his heir, is entitled to recover in this ejectment.

The judgment of the Supreme Court must be reversed.

Judgment reversed.