DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# · STATE OF NEW JERSEY,

AT NOVEMBER TERM, 1855.

........................

## Den Ex Dem. Henry Holcomb vs. Othniel Lake.

1. R. H., by his last will and testment, dated December 26, 1783, devised to his son, J. H., and his heirs (that is the issue of his body lawfully begotten, being either male or female,) for ever certain real estate, the will containing a subsequent clause, that in case said J. H. died before he came and arrived at the age of twenty-one years, *or* without issue, heirs of his body lawfully begotten, then the property to be equally divided among the testator's surviving children : J. H. survived the other children of the testator, arrived at the age of twenty-one years, and died without lawful issue: *held,* that the will created an estate tail in J. H., and that the other children took nothing by the devise; held, also, that upon the death of the testator the reversion descended to his heirs, according to the law of descents then existing.

2. Where there is a devise in fee or in tail, with a limitation over in case the devisee die under twenty-one years, *or* without issue, the word *or* must be construed *and,* unless there are words in the will manifesting a contrary intention.

————

Error to the Supreme Court.

An action of ejectment was brought in the Supreme Court, by Henry Holcomb against Othniel Lake, to reco-

ver possession of the one undivided eighteenth part of four hundred and thirty acres of land, in the possession of the ( efendant, in the township of West Amwell, in the county of Hunterdon.

Upon the return of the declaration, in the term of February, 1852, the parties, by their attorneys, agreed upon a state of the case, to be submitted to the court before argument.

The case turned upon the construction of the will of Richard Holcomb, deceased, an extract from which is inserted in the opinion delivered in this court.

The testator died in the early part of January, 1784, leaving his widow, his son John, about sixteen years of age, and his two daughters, Sarah Leech and Mary Holcomb, being his only children and heirs at law, him surviving. The widow died soon after the death of the testator.

Sarah Leech and Mary Holcomb were married, and had issue when testator made his will.

Sarah Leech died in 1826, Mary Holcomb died in 1835, both of them leaving children and grandchildren.

The lessor of the plaintiff is one of the nine children of Mary Holcomb.

John Holcomb, the only son of the testator, died in 1851, never having married, and by his will gave the principal part of his estate to his illegitimate children and grandchildren, under whom the tenant in possession claims.

The Supreme Court decided that the heirs of Sarah Leech were entitled to one-fourth of the estate devised to John Holcomb, and the heirs of Mary Holcomb of one other fourth part (4 *Zab.* 686), and ordered judgment to be entered for the plaintiff for the one undivided one half of the one undivided eighteenth part of the premises in the plaintiff's declaration set forth and described.

The plaintiff brought a writ of error removing the

judgment into this court, and assigned the following errors:

1. "That the said judgment was rendered in favor of the said plaintiff, and against the said defendant, for the one equal undivided one half part of the one equal undivided one eighteenth part of the lands and premises claimed of the said plaintiff of the said defendant; whereas judgment should have been rendered in favor of the said plaintiff against the said defendant, for the one equal undivided one eighteenth part of the said lands and premises so claimed by the said plaintiff of the said defendant, as aforesaid."

2. "That, by said judgment, it was adjudged that the aforesaid lands and premises descended from Richard Holcomb, the original owner and devisor of the same, to the persons under whom the said plaintiff and defendant claim the same, according to the statute of descents of the state of New Jersey, passed the twenty-fourth day of May, A. D. 1780; whereas it should have been adjudged that said lands and premises (if they descended at all) descended to the said plaintiff and others, according to the statute of descents of the state of New Jersey, passed the twenty-ninth day of January, A. D. 1817."

The case was argued by *Clark* and *Bradley*, for plaintiff, and *W. Halsted*, for defendant.

The CHIEF JUSTICE delivered the opinion of the court.

Richard Holcomb, the testator, in and by his last will and testament, bearing date on the twenty-sixth day of December, 1783, gave to his son, John Holcomb, by appropriate and technical words, an estate tail in the premises in question, and upon his death under twenty-one, or without issue, the testator gave the estate over to his surviving daughters. The language of the devise is as follows:

" *Item.* I give and bequeath unto my son John Hol comb (being my only son) my two homestead plantations, that is, that on which I dwell and that on which Abraham Pittinger liveth, with the premises and appurtenances thereunto belonging or in anywise appertaining, as they are butted and described, and contains, as by the respective deeds bequeathed me by my father as by his last will dated the seventeenth day of the sixth month, Anno Domini 1743, to him, the said John Holcomb, and his heirs (that is the issue of his body lawfully begotten, being either male or female,) for ever, to have possession of the above mentioned premises when he arrives at the mature age of twenty-one years, also my clock and writing-desk, and a two-year old colt, and the sum of sixty pounds current money of the state aforesaid, to be paid unto him at the age of twenty-one years aforesaid ; and if in case my said son John Holcomb die before he comes and arrives to the said age of twenty-one, or without issue, heirs of        body· lawfully begotten, that then my will is, that the said two plantations, the said sum of sixty pounds, clock, writing-desk, and two-year old colt, being the legacy of my said son, be equally divided amongst my surviving children, in manner and the form my executors shall judge most proper and advantageous."

John Holcomb, the devisee in tail, survived the age of twenty-one, but died without issue.   He also survived both his sisters.

The first question in the cause is, whether the limitation over to the daughters of the testator took effect, or whether it failed, either by reason of the failue of the contingency upon which it was to take effect, or by the death of the daughters before the devisee in tail.

It has long been a settled rule of construction, that when there is a devisee fee in with a limitation over, in case the devisee die under twenty one, *or* without issue, the word *or* is construed *and,* and consequently the devise

over will not take effect unless both events happen, *i. e.,* unless the devisee die under age and without issue.

The reason for the rule is thus stated by Mr. Jarman: "The ground for changing the testator's expression in these cases is, that as, by making the event of the devisee leaving issue a condition of his retaining the estate, he evidently intends that a benefit shall accrue to such issue through their parent, it is highly improbable that he should mean this benefit to depend upon the contingency of the devisee attaining majority ; while, on the other hand, it is very probable that the testator should intend, in the event of the devisee dying under age leaving issue, to give him an estate which would devolve upon the issue ; but that if he attained twenty-one (the age at which he would acquire a disposing competency) he should take the estate absolutely, *i. e.,* whether he afterwards died leaving issue or not. The change of *or* into *and,* therefore substitutes a reasonable, for a most unreasonable scheme of disposition." 1 *Jarman on Wills* 444; 1 *Powell on Dev.* 379, *Jarman's note.*

In *Nevison* v. *Taylor*, 3 *Halst.* 45, Chief Justice Kirkpatrick, speaking of a similar devise, said, " It is evidently a mere mistake of the testator in expressing what he must certainly have intended. And it is a mistake so common, and I may say almost so universal, that the courts of justice have thought themselves bound to establish a peculiar rule of construction to provide against it. They have, for this purpose, established it as a principle, that they have authority, and from time immemorial they have exercised the authority, of construing *or*, in these limitations over, to mean *and*, in order to carry into effect the manifest and rational intention of the testator."

In the *Lessee of Hauer* v. *Sheetz*, 2 *Bin.* 545, Ch. Just. Tilghman said, " the word *or* is stripped of its usual disjunctive signification, and converted into a conjunction copulative ; because, if it was construed *disjunctively*, the

devisee, who was the first object of the testator's bounty, might die under twenty-one leaving children, and those children would be deprived of the estate which would pass over to other persons. It is very natural that a man should give his son an estate in fee, and yet provide that it should go to a third person, in case his son died without issue and before the age at which the law permitted him to dispose of it, either by contract or by devise; but that he should give him a fee simple, and then deprive his children of it because he happened to die before twenty-one, is altogether unnatural and improbable. The cases, therefore, that have been cited on this subject stand on a foundation not to be shaken."

In *Beltzhoover* v. *Costen*, 7 *Barr* 18, Mr. Justice Rogers, in delivering the opinion of the court, says, " The intention of the testator, to which all other rules are subordinate, is the governing rule in the construction of wills; but to discover the intention, certain rules have been adopted, by which the court is as much bound as by the general rule itself. Thus, in wills, it is now a settled rule of construction, that where there is a devise of inheritance to any person, and a devise over, depending on his *age or issue*, whether these events are connected by a conjunctive or disjunctive participle, the estate of the first taker is absolute if either of the events take place. The controlling reason given in all the cases is, that otherwise, if the first taker should die under age leaving issue, such issue would be disinherited."

In *Jackson* v. *Blanshan*, 6 *Johns. R.* 54, the testator, having by his will given to his children real and personal estate, further directed that if any one or more of his children should die before they arrive to twenty-one, *or* without lawful issue, his or her share should be divided among the survivors. Kent, Ch. Just., in delivering the opinion of the court, upon a review of the authorities, held the rule to be settled, that the word *or*, in the clause

of limitation over, must be construed *and*, and he added, "It is now to be hoped that the question on the construction of those words in a will will never hereafter be revived. It is important, when a question of this kind has become once settled, (and it is almost immaterial which way) that it should not be disturbed, for it grows into a landmark of property."

The change of phraseology is not made on the ground that there are other provisions in the will rendering it clear that such was the intention of the testator, But, in the absence of any other provision in the will in relation to the matter, the construction results from the language of the devise itself. It rests upon the broad and satisfactory ground, that the controlling purpose of the testator may otherwise be defeated. He obviously intends a benefit not only to the first devisee, but to his issue, and whether that issue be born and the devisee die before or after he is of age, cannot be supposed at all to affect the testator's purpose.

The rule has been repeatedly recognised and sanctioned in this state, and ought not to be regarded as a doubtful or open question. *Den* v. *Taylor*, 2 *South.* 420; *Nevison* v. *Taylor*, 3 *Halst.* 43; *Den* v. *Mugway*, 3 *Green* 330; *Den* v. *English*, 2 *Harr*, 280.

But it is insisted that this rule is not applicable where the first devisee takes an estate in tail, and not a fee. The rule certainly was not applied to an estate tail in the case of *Woodward* v. *Glasbrook*, 2 *Vern*, 388. But no reference whatever is made by the court to the nature of the estate of the first devisee, nor does it appear on what ground the decision was made. In *Brownsword* v. *Edwards*, 2 *Vesey, sen.* 249, Lord Hardwicke said, *arguendo*, that the rule would not be adopted in case of an estate tail, but that was not the point decided. In the recent case of *Mortimer* v. *Hartley*, 6 *Exch. R.* 47, the point was for the first time expressly decided.

There is no ground of distinction between the two classes of cases, except it be, that in case of estates tail, if the construction be adopted, the testator will die intestate as to the reversion. The case of *Mortimer* v. *Hartley* was decided upon the authority of *Brownsword* v. *Edwards*. The court admitted that if the first devise had been in fee, they would have felt bound, by the numerous authorities on that subject, to hold that *or* must be construed *and*. But they added, as none of the authorities apply to an estate tail, and we have Lord Hardwicke's high authority for distinguishing such a case, we are of opinion we ought to do so, and abide by the ordinary sense of the words. The only reason given by the court for the decision is, that thereby they carry into effect a manifest and declared intention of the testator, to give the remainder over upon the determination of the estate tail, and defeat only a presumed intention of the testator, *viz.* that the issue of the first devisee should be benefited by the death of the parent before the time specified in the will. But it is obvious that this reasoning applies as well to an estate in fee as to an estate tail. Even the acute and discriminating mind of Baron Parke has suggested no real distinction between the two cases, and he is content to rest his decision upon the authority of a *dictum* of Lord Hardwicke. Few names in jurisprudence could give higher authority to any opinion, and yet it is manifest that to rest a rule of construction upon such reasons must tend to unsettle, if not to subvert the rule itself.

On the other hand, the reason assigned for the rule applies much more strongly in the case of an estate tail that in that of a fee. When a fee simple is given to the first devisee, and a devise over upon his death without issue, there is only a presumed intention of the testator to benefit the issue, founded on the limitation over in default of such issue. But in the case of an estate tail there is an express limitation of the estate to the issue, and a

declared intention of the testator that they shall be bene-fited. To hold, therefore, that their estate shall be de-feated because their birth occurred, and their parent died, before he was twenty-one, defeats the clearly expressed in-tention of the testator and the controlling purpose of the devise.

The propriety of applying this rule of construction in the case of an estate tail is made more manifest by the effect given by our law to a devise in tail. The operation of such devise under the statute (*Nix. Dig.* 196, § 11,) is to give to the devisee in tail a mere estate for life, and to his issue an estate in fee. The case, therefore, is brought directly within the operation of the general rule of con-struction, as applied to estates in fee; and it rests upon much stronger reasons than if there had been a devise in fee to the first taker, because unless the limitation over is made to depend upon the contingency of the devisee dying under age and without issue, the estate in fee given to the children by operation of the statute under the will, will be defeated by the death of the parent under the age of twenty-one.

Where, therefore, there is a devise, either in fee or in tail, with a limitation over in case the devisee die under twenty-one, *or* without issue, the word *or* must be construed *and*, unless there are words in the will manifesting a contrary intention.

There is clearly no such intention apparent in the will of Richard Holcomb; on the contrary, the limitation over being of personal chattels, some of them of a per-ishable nature, as well as of real estate, it being made to the surviving children, and to be apportioned by the executors, tend very strongly to indicate that the sole contingency in the mind of the testator was the death of his son under twenty-one without issue; and that his death at an indefinitely remote period without issue did not enter into his contemplation. It is not intended, how-

ever, to rest the construction in the present case at all upon these circumstances, but solely upon the express words of the devise, and the well settled rule by which their interpretation is governed.

The limitation over to the daughters of the testator, must be construed to take effect only upon the death of John Holcomb, the devisee in tail, dying under age and without issue.    Upon any other construction, though John Holcomb left issue, yet if he died under twenty-one, the estate of his children would have been defeated, although the declared intention of the testator, and his controlling purpose, as manifested in the will, was to give an estate to those children.    John Holcomb, having survived the age of twenty-one, the contingency upon which the limitation over to the daughters was to take effect failed, and the limitation over did not take effect.    The daughters of the testator took nothing by the devise.    The reversion consequent upon the determination of the estate tail devised to John remained in the testator, and upon his death descended to his heirs at law.

It descended immediately upon the death of the testator, and of course to his heirs then living, and according to the then existing statute of descents, *viz.* in the proportion of two shares to the son and one share to each of the daughters.

This view of the law renders it unnecessary to express any opinion upon the other questions discussed upon the argument.

The judgment below must be affirmed.

*For affirmance*—The CHANCELLOR, the CHIEF JUSTICE and Judges ELMER, RYERSON, VREEDENBURGH, ARROWSMITH, CORNELISON, HUYLER, RISLEY, VALENTINE, and WILLS.

*For reversal*—None.

CITED *in Moore* v. *Rake,* 2 *Dutch.* 590.