IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

NORTHERN DISTRICT—OCTOBER TERM 1869.

## Doebler's Appeal.  Biggs's Appeal.

1. A devise was to a wife, "the use of my mansion-house during life should she remain my widow, but should she marry again, then my mansion-house shall be my son's."  "I give to my son the block, &c.; * * also my mansion-house after my wife's decease should she remain unmarried, as also the lot of ground, &c. * *  But he shall in nowise sell or alienate any of the property, as it is intended he shall have a life interest only in the same, with remainder over to his heirs in fee, * * and he shall in nowise come into possession * * until his twenty-second year."  The testator then ordered other estate to be sold and proceeded: "It is my desire that what money there is over after paying my debts, shall be invested in real estate, the income from which my son shall receive during his life, and remainder over to his heirs in fee. * *  I hereby devise that should *my son die without heirs*, or, *before he becomes twenty-two years*, * * all my property shall be disposed of, one-half to my sisters or to their heirs after them; one-half to St. Paul's Church," &c.  *Held*, that "*or*" was to be construed "*and*;" also that the son took a fee.

2. This construction in such cases has been so conclusively settled as to be a landmark of the law not to be shaken.

3. The devise over was to take effect only on a failure of the heirs of the first devisee dying before his arrival at twenty-two.

4. Technical words are taken to be used according to their proper technical sense, unless the other parts of the will imperatively require otherwise.

5. A particular intent must yield to a general, if both cannot consist together.

6. The presumption that words of limitation in a will are used in their ordinary legal sense, is not to be overcome by other words, merely incongruous with such intention.

7. If the intention be ascertained that the heirs are to take *qua* heirs, they must take by descent, and the inheritance vest in the ancestor.

[Doebler's Appeal.]

8. The rule in Shelly's Case is never a means of discovering the intention; it is applicable only after that has been discovered; it is then an unbending rule.

9. If an estate to heirs be given as an immediate remainder after the freehold, it vests as an executed estate of inheritance in the ancestor; if after an interposed estate, it vests in him as a remainder.

10. The testator cannot prevent this legal consequence by any declaration, however plain, of a contrary intention.

11. Such would be an inconsistent subordinate intent which must be sacrificed to the paramount one.

12. If the testator expressly declare that the rule shall not apply, that the devisee shall not sell or alienate, but shall have but a life estate, &c., this will not prevent the operation of the rule.

13. No one can create what in law is a fee, and deprive the tenant of those essential rights and privileges which the law annexes to it.

14. A court of equity will not compel a purchaser to accept a title which is in the least degree doubtful.

15. Whenever the question is between a fee simple and fee tail, it is a wise precaution to provide by the decree that the deed shall be so executed as to bar the tail.

January 24th 1870, at Philadelphia. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Appeals from the decree of the Court of Common Pleas of *Columbia county:* In Equity.

On the 19th of April 1869, Elisha H. Biggs filed a bill against Charles H. Doebler for the specific performance of an agreement, dated August 21st 1868, by which the plaintiff covenanted to convey to the defendant a lot of land in Bloomsburg for the consideration of $3000, of which $100 was to be paid on the execution of the agreement, $400 on the 1st of October following, and the remainder in semi-annual payments of $500 each, with interest until all the purchase-money should be paid. Upon the defendant paying off the money due on the 1st of October 1868 and entering into bond and mortgage to secure the balance, the plaintiff was to deliver to him a good and sufficient deed in fee simple. The bill set out that the plaintiff's title was under the will of Elisha Biggs, deceased, who died seised of the premises in fee, leaving a widow and the plaintiff his only child. The will was proved July 7th 1851. After ordering the payment of his debts, &c., he provided as follows:—

"2. I give and bequeath to my wife, Margaret Biggs (in lieu of dower at common law or otherwise), the yearly sum of one hundred dollars, to be paid to her in quarterly payments during the term of her natural life, in each and every year, and after my debts are paid she shall have the additional sum of fifty dollars a year. I also direct and it is my wish, that should my son Elisha H. Biggs die without heirs, that she shall have an additional fifty dollars, if my debts are paid. I also give and devise to her the use of my family mansion-house during her life should she remain a widow, but should she marry again then my mansion-house shall

be my son's and she shall be entitled to receive the sum of fifty dollars a year during her life, instead of one hundred and fifty already mentioned, and should my son die without heirs she shall not be entitled to the additional fifty dollars, and my mansion-house shall go as hereafter devised.

" 3. I give and devise to my son, Elisha H. Biggs, the block known as the Exchange Building and the Old Arcade; beginning, &c. * * *   I also give and devise to him my mansion-house after my wife's decease, should she remain unmarried, as also the lot of ground immediately below it, containing about one-half acre, more or less. * * But he shall in nowise sell or alienate any of the above-described property, as it is intended that he shall have a life interest only in the same, with remainder over to his heirs in fee, subject to the payment of my debts, and subject also to the bequest to my wife, or any other bequests hereafter mentioned, and he shall in nowise come into possession of any of the above-described property until his twenty-second year.

" 4. I hereby direct my executors, hereafter mentioned, to rent my stores, &c.   I also direct them to convey and sell all my real and personal estate undevised, &c., * * but should they be unable to sell the Exchange Hotel and store until my son attains his twenty-second year, he may retain them upon the same conditions as my other bequests already made to him, but should he not wish to have or to hold the same, then it is my wish and desire that they may be sold without reserve to the highest bidder, upon the most reasonable and easy conditions, within three years after my son attains his twenty-second year. * * *   My son may become a purchaser of the hotel and store, should they not, when offered for sale, bring their full value, after he becomes twenty-two years old.

" 6. It is my desire that what money there is, if any, over and above paying my debts and other bequests and payments, when my son becomes twenty-two years old, or upon the sale of the hotel and store, should my son refuse to take or purchase it, shall be invested in real estate, the income from which my son shall receive during his life, and the remainder over to his heirs in fee, subject to the bequest to my wife.

" 7. It is my request, and I hereby devise, that should my son die without heirs, or before he becomes twenty-two years old, that all my property, after the payment of my debts, shall be disposed of as follows—one-half to my sisters or to their heirs after them; one-half to St. Paul's Church, Bloomsburg, &c." * *

The widow elected not to take under the will.   The plaintiff attained the age of twenty-two years on the 18th of November 1867 and on the 28th of September 1868, the widow of the testator released to him all her right of dower and interest in the

premises. The bill averred that the defendant had paid $100 of the purchase-money and on the 1st of October 1868, the plaintiff tendered the defendant a deed in fee simple and possession of the premises, and demanded payment of the $400 then due and bonds and mortgage for the remaining payments; that the defendant refused to pay the $400 and give the bond and mortgage, alleging that the plaintiff held but a life estate and could not convey a title in fee simple. The plaintiff averred that under the will of the testator he was seised in fee simple of the premises.

The prayer was, that the court would declare what estate the plaintiff took under the testator's will and decree specific performance by the defendant, and if the court should be of opinion that the plaintiff took but an estate tail, that the defendant should accept such deed as the court shall direct to bar the entail, &c.

The defendant answered, admitting the averments of the bill, except that the plaintiff had a fee simple, which he denied. He further answered, "that he is willing that the court shall decree him to take the property and to pay the sums of money agreed to be paid, and to secure the money yet to become due, according to the terms of the said agreement, if the court are of opinion that the plaintiff can convey in fee simple."

The court, on the 24th day of June 1869, decreed that "the plaintiff has such title to the land described in the bill of complaint as enables him fully to comply with and perform the agreement therein recited, and upon the plaintiff tendering to the said Charles H. Doebler, a proper conveyance according to said agreement, which conveyance shall be executed in such form as to dock any entail which may exist in said land, the defendant, Charles H. Doebler, to pay to the plaintiff the sum of $900 within ten days after such tender, and also to deliver to the plaintiff his bonds for further sums according to the said agreement," &c.

Each party appealed to the Supreme Court. The defendant assigned for error, that—

"The court erred in decreeing that the plaintiff below, Elisha H. Biggs, has such title to the land described in the bill of complaint as enables him fully to comply with and perform the agreement therein recited."

The plaintiff assigned for error, that—

"The court did not decree the estate of Elisha H. Biggs, the plaintiff, to be a fee simple; and that Charles H. Doebler, the defendant, should accept the deed tendered to him before suit brought."

*C. B. Brockway*, for Doebler.—The rule in Shelly's Case does not operate where the testator's intention is ascertained: Guthrie's Appeal, 1 Wright 14; Miller *v.* Lynn, 7 Barr 444; Gernet *v.* Lynn, 7 Casey 94. The changing of words is proper

[Doebler's Appeal.]

only when the testator's meaning is doubtful: 10 Bac. Abr. 539, 540; Engelfried v. Woelpart, 1 Yeates 45; Griffith v. Woodward, Id. 319. A gift for life cannot be enlarged into a fee by implication: Sheets's Estate, 2 P. F. Smith 262; Cowles v. Cowles, 3 Id. 176. A condition not to alienate is bad as to a fee, but good as to an estate for life: Turner v. Fowler, 10 Watts 329. The intention of the testator must prevail, and each will is to be expounded according to its peculiar circumstances: Morrison v. Semple, 6 Binn. 97; Hauer v. Shitz, 3 Yeates 222; Fetrow's Estate, 8 P. F. Smith 424.

*J. G. Freeze* and *J. W. Comly*, for Biggs.—Rule in Shelly's Case, 1 Rep. 104 *a*, is the rule in Pennsylvania; Carter v. Mc-Michael, 10 S. & R. 429; Paxson v. Lefferts, 3 Rawle 59; Hileman v. Bouslaugh, 1 Harris 344; George v. Morgan, 4 Id. 95; Roe v. Bedford, 4 M. & Selw. 362; Angle v. Brosius, 8 Wright 187; Seely v. Seely, 8 Id. 434; Curtis v. Longstreth, Id. 297; Nice's Appeal, 14 Id. 143. When the intention requires, " *or* " may be changed to " *and:* " 2 Fearne on Cont. Rem. 97; Smith on Executory Interests, Ch. II. sec. 3, p. 235, &c., pl. 3; Holmes v. Holmes, 5 Binn. 253; Scott v. Price, 2 S. & R. 59; Beltzhoover v. Costen, 7 Barr 13.

The opinion of the court was delivered, February 7th 1870, by SHARSWOOD, J.—These are appeals by both parties from the decree of the court below upon a bill in equity to enforce the specific performance of a contract of sale, in which the only question presented is, whether the plaintiff had such a title to the premises as the defendant the purchaser could be compelled to accept. The plaintiff insists that he has a fee simple; the defendant that he has but a life estate. The learned court below thought, as it would seem, perhaps, that he had an estate tail, and decreed accordingly that the plaintiff should execute a conveyance in such form as to dock any entail which may exist in the land.

The testator devised his family mansion-house to his wife during her life, should she remain a widow, but should she marry again it was to be the plaintiff's. He also devised to him the same with an adjoining lot after his wife's decease, should she remain unmarried, adding thereto the following clause: " But he shall in nowise sell or alienate any of the above described property, as it is intended that he shall have a life interest only in the same, with remainder over to his heirs in fee." After several other directions, not material to be noticed, he provides: " It is my request, and I hereby devise that should my son die without heirs, or before he becomes twenty-two years old, that all my property, after payment of my debts, shall be disposed of as follows, one-half

[Doebler's Appeal.]

to my sisters or to their heirs after them, one-half to St. Paul's Church of Bloomsburg," &c.

It will conduce best to a proper understanding of these provisions, to commence by an examination of the true construction of this devise over. It is unnecessary to consider now what the word "heirs" means in this connection, because it is abundantly clear, both upon reason and authority, that the clause must be construed as if the conjunctive word "and" were substituted for the disjunctive "or" in the sentence. Upon reason : because, if it is construed disjunctively, the devisee, the testator's only son, who was the first object of his bounty, might die under twenty-two leaving children, and those children would then be deprived of the estate. This is the literal and grammatical construction of the words as they stand. But this most assuredly the testator never intended. Upon authority : for the courts have uniformly, in wills containing exactly the same language, construed the word "or" to mean "and." The English books are full of cases, but we need not look beyond the decisions in this state. The question arose and was argued by the most able and eminent counsel of their day in Hauer's Lessee *v.* Shitz, 3 Yeates 205, and the Supreme Court gave effect to the devise according to its literal construction. But this judgment was removed by writ of error from the Supreme Court to the High Court of Errors and Appeals, and was there, after another full argument reversed, Chief Justice Tilghman delivering the opinion: 2 Binn. 532; s. c. 3 S. & R. 487, n. "These expressions," said he, "have often been used in wills, and often received the consideration of courts of justice; and from the case of Price *v.* Hunt, Pollexfen 645, in the year 1684, down to that of Hawkesworth's Lessee *v.* Morgan, determined by the Court of King's Bench in Ireland, whose judgment was affirmed in 1805 by the British House of Lords, the word ' *or*,' in cases like the present, has been construed conjunctively; that is to say, it has been held that the executory devise over did not take effect, unless the first devisee died under twenty-one, and *also* without issue. The same construction was made in this court in the case of a deed in Maury's Lessee *v.* Rawle, and in the Supreme Court, according to one of the cases cited, Cheeseman's Lessee *v.* Wilt, in the case of a will." The point was again made, and we are told by the reporter was elaborately argued by Watts for the plaintiff in error, and Duncan, contrà, in Holmes *v.* Lessee of Holmes, 5 Binn. 252, and the previous determination of the High Court of Errors was re-affirmed, Chief Justice Tilghman carefully reviewing in his opinion all the authorities. To the same effect are the subsequent cases of Scott *v.* Price, 2 S. & R. 59, and Beltzhoover *v.* Costen, 7 Barr 13. This construction has been so conclusively settled as to have become one of the landmarks of the law not now to be shaken. We must assume,

then, that this devise over was only to take effect on a failure of the heirs of the first devisee dying before his arrival at twenty-two years of age. The first devisee did attain that age, and of course the devise over fell. It is only important now, so far as it may properly assist us in the construction of the whole will.

To reach this, while the intention of the testator, if consistent with law, is undoubtedly to be the polar star, yet we are bound to take as our guides those general rules or canons of interpretation which have been adopted and followed by those who have gone before us. It becomes no man and no court to be wise above that which is written. Security of titles requires that no mere arbitrary discretion should be exercised in conjecturing what words the testator would have used, or what form of disposition he would have adopted had he been truly advised as to the legal effect of the words actually employed. That would be to make a will for him instead of construing that which he has made. There are two such canons of construction, which have been so universally recognised as sound and just, that it would be a mere affectation of learning to cite books in their support. The first is, that technical words shall be taken to have been used according to their proper technical sense, unless the other parts of the will imperatively require a different one. If this were not so, even the best legal advice might not avail a man in preparing this solemn instrument—in which the most sacred affections of the heart are so much concerned. The second is, that a particular intent shall always give way to a general one if the two cannot consist together; for surely every man would desire that if his main object cannot be carried out according to law consistently with some particular wish, that the minor object should be sacrificed to the more important.

When the testator, therefore, in this instance devised his mansion-house and the adjoining lot to his son the plaintiff for life, with remainder over to his heirs in fee, it would require a very clear indication of an intention on his part to use the word "heirs" in some other than its well ascertained legal sense to justify a court in departing from it. "The presumption is," says Mr. Justice Strong, "that he used it in its ordinary legal sense, *i. e.*, as a word of limitation, and all the cases prove that this presumption is not to be overcome by other words in the will, merely incongruous with such an intention. A testator may doubtless use the word 'heirs' as synonymous with 'children;' but his intent thus to use it must be gathered from something more than implication. It must be expressed:" Criswell's Appeal, 5 Wright 288. There is not, as it seems to us in the will under consideration, even a clear implication that the testator meant by the word heirs anything else than the whole class of persons falling by law within that denomination, collateral as well as lineal. The devise

[Doebler's Appeal.]

of one-half of all his property, in an event within a definite period, which as we have seen never happened, on default of heirs of the devisee dying under twenty-two, to persons who would have been collateral heirs of the devisee, is at most a mere incongruity. It may well be doubted whether it is even that; for it is evident that he intended to dispose by his will of all his property. He says so. He had no idea of dying intestate as to any part—of any reversion remaining in him to descend to his heirs. Yet if his son had survived twenty-two, and then died without issue or heirs of his body, to which it is proposed to restrict the word heirs, it is plain, if this construction should prevail, that his sisters or their heirs would not have taken anything under the will. Their only title would have been as heirs of the reversion. If, indeed, the first limitation had been to heirs simply, and the devise over had been in default of heirs indefinitely, there would have been good reason and authority for holding that by "heirs," in both parts of the will, he meant "heirs of the body." It would then have been very clear that he never intended his sisters or their heirs to take, unless those whom he calls the heirs of his son should fail, and as the devise over, after failure of heirs of his son, is to his own aunts, he must have necessarily meant a class of heirs amongst whom the aunts could not have been enumerated, for otherwise he would have been making a gift over which could not take effect until after the extinction of the persons to whom it would have been given. There is a long line of authorities which settle the proper construction in such cases to be, that "heirs" means "heirs of the body." I will only cite a few of the leading decisions: Webb *v.* Hearing, Cro. Jac. 415; Parker *v.* Thacker, 3 Lev. 70; Nottingham *v.* Jennings, 1 P. Wms. 23; Preston *v.* Funnell, Willes 164; Goodright *v.* Goodridge, Id. 369; Goodright *v.* Dunham, Dougl. 264; Allen *v.* Spendlove, Frem. 74; Tyte *v.* Willis, Cas. Temp. Talb. 1; Morgan *v.* Griffiths, Cowp. 234; Doe *v.* Perryn, 3 T. R. 484; Doe *v.* Bluck, 6 Taunt. 485. But here it is to be noticed that the first limitation is to the heirs in fee—expressing clearly that he did not mean an estate tail— but what is still more significant, the devise over is only to take effect within a definite period—while his son is under twenty-two years of age. Now, he might well have intended heirs of the body in this devise over, and yet not have intended it in the first limitation. His meaning was, that if his son died under twenty-two without issue, then his sisters should have one moiety of his property and St. Paul's Church, of Bloomsburg, the other—but if he survived that period, then it was to vest absolutely in him in fee, or, what is the same thing, in his heirs in fee. When we are searching for the mind of a testator, all parts of the will are to be taken together, and reconciled, if possible, so as to be consistent with law. Without questioning, therefore, the rule of con-

[Doebler's Appeal.]

struction, which, as we have seen, has been so well settled, we think this will is not within it. I have found no case in which it has been applied where the limitation over has been within a definite period, and certainly none in which the express limitation in the first instance was to the heirs in fee.

The terms of the devise over in this will are therefore certainly far short of that affirmative evidence of a contrary intent, so clear as to leave no doubt, which is required by the authorities, to vary the legal meaning of the word "heirs:" Physick's Appeal, 14 Wright 136. If the intention is ascertained that the heirs are to take *qua* heirs, they must take by descent, and the inheritance vest in the ancestor. The rule in Shelly's Case is never a means of discovering the intention. It is applicable only after that has been discovered. It is then an unbending rule of law, originally springing from the principle of the feudal system, and though the original reason of it, the preservation of the rights of the lord to his relief, primer seisin, wardship and marriage has passed away, it is still maintained as a part of the system of real property which is based on feudalism, and as a rule of policy. It declares inexorably that where the ancestor takes a preceding freehold by the same instrument, a remainder shall not be limited to the heirs *qua* heirs, as purchasers. If given as an immediate remainder after the freehold, it shall vest as an executed estate of inheritance in the ancestor: if mediately after some other interposed estate, then it shall vest in him as a remainder. Wherever this is so, it is not competent for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention. That is a subordinate intent which is inconsistent with, and must therefore be sacrificed to, the paramount one. Even if he expressly provides that the rule shall not apply—that the ancestor shall be tenant for life only and impeachable for waste—if he interpose an estate in trustees to support contingent remainders—or, as in this will, declare in so many words that "he shall in nowise sell or alienate, as it is intended that he shall have a life interest only," it will be all ineffectual to prevent the operation of the rule. No one can create what is in the intendment of the law an estate in fee, and deprive the tenant of those essential rights and privileges which the law annexes to it. He cannot make a new estate unknown to the law.

We are of opinion, then, upon the proper construction of this will, that the plaintiff took an estate in fee simple. But we must remember that the devisees over are not parties to this proceeding, and will not be conclusively bound by this decree. They may moot the question again hereafter. A court of equity on a bill to compel the specific performance of a contract of sale of real estate will never compel a purchaser to accept a title which is in the least degree doubtful. It is their duty to take care that

14 P. F. SMITH—2

[Doebler's Appeal.]

he shall be perfectly secure. Wherever the question upon the construction of a will or other instrument is between a fee simple and an estate tail, it is a wise precaution to provide by the decree that the conveyance shall be executed in such form as to bar the entail, if one exists, and thus vest an indubitable fee simple in the purchaser. Where the mode of doing this is so simple and inexpensive as it is under the Act of Assembly of January 16th 1799 (3 Smith 388), there is no reason why it should not be done in all such cases. From the terms of the decree appealed from, this was probably the view which was taken by the learned court below, and we think that they were right.

Decree affirmed—each party to pay his own costs upon these appeals.